UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| TEXAS STANDARD OIL COMPANY, | § | CASE NO. 08-34031 |
| | § | CHAPTER 11 |
| Debtor. | § | |

**DEBTOR'S OBJECTION TO CREDITORS MARINER ENERGY, INC. AND MARINER ENERGY RESOURCES, INC.'S MOTION TO ABANDON PLATFORM AND REQUEST FOR ATTORNEYS FEES AND COSTS PURSUANT TO 28 U.S.C. § 1927**
[Related to Docket No. 57]

TO THE HONORABLE JEFF BOHM, UNITED STATES BANKRUPTCY JUDGE:

COMES NOW, Texas Standard Oil Company ("Debtor") and files its *Objection to Creditors Mariner Energy, Inc. and Mariner Energy Resources, Inc.'s Motion to Abandon Platform and Request for Attorneys Fees and Costs Pursuant to 28 U.S.C. § 1927*, and shows:

**PRELIMINARY STATEMENT**

1.      Creditors Mariner Energy, Inc. and Mariner Energy Resources, Inc. ("Mariner") appear to be requesting consent from the Debtor to remove or "abandon" the High Island A-552 platform (the "Platform"). Such consent is required by the governing Offshore Operating Agreement. However, the relief currently sought merely causes the Debtor's interest in the Platform to revert back to Texas Standard Oil Company as if no bankruptcy petition were filed. In which case, Mariner would still be required to abide by the Offshore Operating Agreement in requesting Debtor's consent, making this motion moot and a waste of judicial resources and the Debtor's resources.

## THE OFFSHORE OPERATING AGREEMENT
## AND THE ORDINARY COURSE OF BUSINESS

2.      Mariner is the operator of the Platform.[1]  Attached hereto as Exhibit "A" is the Offshore Operating Agreement for Block A-552 High Island Area ("Offshore Operating Agreement") which governs Mariner's operations.  Article 8.26 of the Offshore Operating Agreement governs removal of the Platform.  Article 8.26 of the Offshore Operating Agreement provides that any party may request the Operator to furnish to the owners of the Platform "the estimated net deficit or net value resulting from the salvage and removal of the platform . . . ." Any disagreement as to such values is to be settled by a majority in interest. Article 8.26 then states:

> Within thirty (30) days after the fixing of such estimate, any party owning an interest in a platform may propose . . . that it be salvaged and removed from the lease, at the same time agreeing to convey its interest therein to any owner thereof desiring to retain the platform and to pay to or accept from such other owners such proposing party's share of such estimated net deficit or net value, as the case may be . . . . If no party desires to retain the platform, Operator shall proceed promptly to have same salvaged and removed at the cost of the owners thereof.[2]

3.      The Debtor owns an interest in the Platform as indicated on its schedules,[3] which is subject to the ongoing lawsuit between Mariner and the Debtor, which is on appeal with the Fifth Circuit.

4.      The lease on which the Platform sits has produced in the past, but has ceased all production and has been surrendered to the federal government.

---

[1]  Creditors Mariner Energy, Inc. and Mariner Energy Resources, Inc.'s Motion to Abandon Platform [Docket No. 57] (the "Motion"), ¶ 2.
[2]  Offshore Operating Agreement, art. 8.26.
[3]  *See* Debtor's Amended Schedule A [Docket No. 47].

1314217-1:TSOC:0001

5. Thus, Mariner, as Operator, is required to furnish the estimated value or deficit (net of salvage), wait thirty (30) days, and then request the consent of all of the parties, including the Debtor, allowing another thirty (30) days for all the parties to respond, before removing the Platform. Instead of performing its obligations under the Offshore Operating Agreement in the ordinary course of business, Mariner filed its Motion.

6. Belatedly, after it filed its unnecessary and wasteful Motion, on September 29, 2008, Mariner sent to Debtor its Authority for Expenditure ("AFE") No. 080688 for the platform removal, which is attached hereto as Exhibit "B". Mariner failed to send the Debtor this document before filing its Motion. The AFE submitted still does not follow the procedures and timelines set out in the Offshore Operating Agreement. Mariner's AFE does not estimate any salvage value of the processing and other equipment on board the Platform or the estimated value of such salvageable equipment. Operator is required under the Offshore Operating Agreement to furnish such estimates thirty days **prior to** a proposal to remove the platform.[4] The AFE itself was approved by signature of a Senior Vice President or Chief Executive Officer of Mariner on August 19, 2008. No explanation is offered why Mariner has never furnished the salvage value estimates required or why Mariner waited another month and one-half to even send the deficient AFE to Debtor. Mariner filed the Motion *before it even mailed the AFE*. Without knowing the actual net value or deficit, Debtor is unable to evaluate whether to consent or to request payment to Debtor of the net deficit so Debtor can take over the Platform.

## ABANDONMENT UNDER 11 U.S.C. § 554

7. Section 554(b) states:

> On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate

---

[4] *See* Offshore Operating Agreement, art. 8.26

> that is burdensome to the estate or that is of inconsequential value
> and benefit to the estate.[5]

8. While it appears that Mariner is seeking the Debtor's consent to remove the Platform, an order granting this Motion does not have that effect. Ordering the Debtor to abandon the Platform merely causes the estate's interest to revert back to Texas Standard Oil Company as if no bankruptcy had been filed.

> Property abandoned under this section ceases to be part of the estate. It reverts to the debtor and stands as if no bankruptcy petition was filed. Following abandonment, 'whoever had the possessory right to the property at the filing of bankruptcy again reacquires that right.'[6]

9. Thus, even if abandonment by the estate were proper, which the Debtor does not concede, Mariner would still be required to provide the necessary documentation per the Offshore Operating Agreement and ordinary course of business so that Texas Standard Oil Company could determine whether to consent to the proposed removal of the Platform.

10. If abandonment under § 554(b) were the appropriate relief for Mariner to seek, Mariner must meet its burden to show that the Platform is burdensome or of inconsequential value to the Debtor's estate.[7]

11. The affidavit attached to the Motion is insufficient to meet this burden.[8] Mariner has produced no documentation indicating the salvage value of the Platform or the cost to bring

---

[5] 11 U.S.C. § 554(b).
[6] *In re Dewsnup*, 908 F.2d 588, 590 (10th Cir. 1990), *aff'd*, 502 U.S. 410, 112 S. Ct. 773, 116 L. Ed. 2d 903 (1992) (internal citations omitted). *See also Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380 (5th Cir. 2008) ("But, 'upon abandonment ... the trustee is ... divested of control of the property because it is no longer part of the estate .... Property abandoned under [§] 554 reverts to the debtor, and the debtor's rights to the property are treated as if no bankruptcy petition was filed.'") (quoting 5 COLLIER ON BANKRUPTCY § 554.02[3]); *In re Calvin*, 329 B.R. 589, 602 (Bankr. S.D. Tex. 2005) ("Title does not revest in the debtor until the property is either "properly claimed and allowed as exempt, or abandoned by the trustee.") (quoting *In re Laux*, 181 B.R. 60 (Bankr. S.D. Ill. 1995)).
[7] *In re Siegel*, 204 B.R. 6, 8 (Bankr. W.D.N.Y. 1996) ("Section 554(b) sets neither an effective date for the valuation of property nor a presumption derived from any delay in the trustee's administration. Rather, the movant must prove by a preponderance of evidence that the property has no greater than inconsequential value.").

the Platform on shore versus the cost of reefing the Platform.  Moreover, the affiant is not identified other than as a "representative of Mariner Energy, Inc."  Mariner presents no evidence regarding the affiant or his background that would suggest the affiant is capable of assessing these costs.

### FURTHER RESPONSE

12. Debtor admits Paragraphs 1 and 2 of the Motion.

13. Paragraph 3 of the Motion is legal argument that does not require a response.  To the extent a response is required, Debtor denies Paragraph 3 of the Motion.

14. Sentence 1 of Paragraph 4 of the Motion is legal argument that does not require a response.  To the extent a response is required, Debtor denies Sentence 1 of Paragraph 4 of the Motion.  Debtor lacks personal knowledge to admit or deny the remainder of Paragraph 4 of the Motion.  To the extent a response is required, Debtor denies the remainder of Paragraph 4 of the Motion.

15. Paragraphs 5 and 6 of the Motion are legal arguments that do not require a response.  To the extent a response is required, Debtor denies Paragraphs 5 and 6 of the Motion.

16. Debtors denies that the relief requested is appropriate or warranted.

### REQUEST FOR ATTORNEYS FEES AND COSTS PURSUANT TO 28 U.S.C. § 1927

17. The Debtor requests that the Court award attorney's fees and costs incurred for responding to this premature and unnecessary Motion as the Motion is wasteful and unreasonably multiplies the proceedings in this Court.  Mariner is attempting to short circuit and evade the express procedures under the Offshore Operating Agreement in filing this Motion.  Even if this Motion were granted, Mariner would still be obligated under the Offshore Operating

---

[8] *See e.g., McCallum Highlands, Ltd. v. Wash. Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995) ("unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either

1314217-1:TSOC:0001

Agreement to present the Debtor with an estimated net value or deficit thirty days before an AFE so that the Texas Standard Oil Company could then decide whether to consent to removal of the Platform.  Thus, the Motion, even if granted, accomplishes nothing and rewards Mariner for breaching the Offshore Operating Agreement.

18.     This Court may award the Debtor its attorneys fees and costs pursuant to 28 U.S.C. § 1927:

> 28 U.S.C. § 1927 allows federal courts to assess costs and attorney's fees against an attorney who has unreasonably multiplied the proceedings in a case. Under the plain language of the statute, three essential requirements must be satisfied with respect to an award of sanctions under § 1927: (1) the attorney must engage in "unreasonable and vexatious" conduct; (2) the "unreasonable and vexatious" conduct must be conduct that "multiplies the proceedings;" and (3) the dollar amount of the sanction must bear a financial nexus to the excess proceedings, i.e., the sanction may not exceed the "costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. *See Stewart v. Courtyard Management Corp.*, 155 Fed.Appx. 756, 760, 2005 WL 3114914 at *4 (5th Cir. 2005) (citing *Peterson v. BMI Refractories,* 124 F.3d 1386, 1396 (11th Cir.1997)).[9]

19.     Mariner's behavior is unreasonable as the Motion is premature, Mariner is in breach of the Offshore Operating Agreement and, even if granted, does not relieve Mariner of its duty to abide by the express procedures of the Offshore Operating Agreement so that Texas Standard Oil Company may determine whether to consent to remove the Platform.

20.     The Motion has unnecessarily multiplied proceedings, and the Motion does not achieve Mariner's stated goal of obtaining consent to remove the Platform.  The Motion merely serves to increase the Debtor's legal fees.

---

support or defeat a motion for summary judgment.").
[9]   *In re Rollings*, 2008 WL 899300, *13 (Bankr. S.D. Tex. 2008) (internal footnote omitted).

21. Debtor's attorneys fees and costs in responding to this Motion are, at a minimum, $2,448.50, which do not include the attorneys fees and costs incurred for preparing for and attending the hearing on the Motion.[10]

## CONCLUSION

22. Mariner appears to request the Debtor's consent to abandon or remove the Platform; however, Mariner has failed to comply with the Offshore Operating Agreement. Instead, Mariner filed the Motion requesting that the bankruptcy estate abandon its interest in the Platform. Mariner's request, even if granted, does not relieve Mariner of its duties under the Offshore Operating Agreement.

23. Mariner's Motion does not achieve Mariner's stated goal and serves only to increase the Debtor's legal fees. As such, the Debtor requests that the Court award it attorneys fees and costs of not less than $2,448.50.

WHEREFORE, PREMISES CONSIDERED, the Debtor respectfully requests that the Court deny *Creditors Mariner Energy, Inc. and Mariner Energy Resources, Inc.'s Motion to Abandon Platform*, grant its *Request for Attorneys Fees and Costs Pursuant to 28 U.S.C. § 1927*, and grant such other relief to which the Debtor may be entitled.

Respectfully submitted,

*/s/ Heather McIntyre*
Wayne Kitchens        TBN 11541110
Heather McIntyre      TBN 24041076
HUGHESWATTERSASKANASE, LLP
333 Clay Street, 29th Floor
Houston, Texas 77002
Tel: 713.759.0818
Fax: 713.759.6834
COUNSEL FOR TEXAS STANDARD OIL COMPANY

---

[10] Affidavit of Heather McIntyre, attached hereto as Exhibit "C".

1314217-1:TSOC:0001

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing document was served via ECF and/or first class US Mail, postage prepaid, on October 10, 2008, on the parties listed on the attached Service List.

                                        */s/ Heather H. McIntyre*
                                        Heather H. McIntyre

1314217-1:TSOC:0001

## SERVICE LIST

**Debtor**
Texas Standard Oil Company
9 Greenway Plaza, Suite 3040
Houston, Texas 77046-0919
*Via US Mail*

**Debtor's Counsel**
Wayne Kitchens, Esq.
Heather McIntyre, Esq.
HughesWattersAskanase, LLP
333 Clay Street, 29th Floor
Houston, Texas 77002-4168
*Via ECF*

**U.S. Trustee**
Stephen D. Statham, Esq.
U.S. Trustee's Office
515 Rusk Street, Suite 3516
Houston, Texas 77002
*Via ECF*

**Parties Requesting Notice**

Bradley DeLuca, Esq./Brigid Ashcroft, Esq.
George A. Kurisky, Jr., Esq.
Johnson DeLuca Kennedy, et al.
1221 Lamar Street, Suite 1000
Houston, Texas 77010
*Attorney for Mariner Energy, Inc.
and Forest Oil Corp.*
*Via ECF*

John P. Dillman, Esq.
Linebarger Goggan Blair & Sampson, LLP
1301 Travis Street, Suite 300
Houston, Texas 77002-7430
*Via ECF*

Lawrence F. Labanowski, Esq.
Edward F. Mulholland
Lawrence F. Labanowski & Associates
3939 Essex, Suite 600
Houston, TX 77027
*Via ECF*

**Creditors**
Timothy Roberson
9 Greenway Plaza, Suite 3040
Houston, Texas 77046-0919
*Via US Mail*

Pat Johnson
9 Greenway Plaza, Suite 3040
Houston, Texas 77046-0919
*Via US Mail*

Langston Energy, LLC
9 Greenway Plaza, Suite 3040
Houston, Texas 77046-0919
*Via US Mail*

TXS 498 Corp.
9 Greenway Plaza, Suite 3040
Houston, Texas 77046-0919
*Via US Mail*

Spagnoletti & Co.
401 Louisiana, 8th Floor
Houston, TX 77002
*Via US Mail*

Edward R. Ziegler, PE
5063 Westheimer, Suite 810
Houston, TX 77056
*Via US Mail*

Texas Standard Oil & Gas, LP
9 Greenway Plaza, Suite 3040
Houston, Texas 77046
*Via US Mail*