UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| TEXAS STANDARD OIL COMPANY, | § | CASE NO. 08-34031 |
| | § | CHAPTER 11 |
| Debtor. | § | |

**BRIEF IN SUPPORT OF DEBTOR'S MOTION FOR AUTHORITY TO PERFORM
UNDER PRE-PETITION NOMINEE AGREEMENT REGARDING HIGH ISLAND A-96**
[Related to Docket No. 56]

TO THE HONORABLE JEFF BOHM, UNITED STATES BANKRUPTCY JUDGE:

COMES NOW, Texas Standard Oil Company ("Debtor") and respectfully files its *Brief in Support of Debtor's Motion for Authority to Perform Under Pre-Petition Nominee Agreement Regarding High Island A-96*.

### PRELIMINARY STATEMENT

1.      The Debtor contends that it holds bare legal title in High Island A-96 ("HI A-96") and that it does not have an equitable interest in HI A-96. Third parties paid for HI A-96 and as such, the equitable interest in HI A-96 is not property of the estate. According to the Nominee Agreement, Debtor must assign its interest in HI A-96. The fact that an insider is involved in the purchase of HI A-96 does not change the result that an equitable title holder is entitled to its property as shown in the cases discussed below.

2.      Further, under Texas law, when title to property is taken in the name of an entity other than the one that provided the purchase money, a resulting trust is created in favor of the entity that advanced the money for the purchase.[1] Therefore, Texas law imposes a resulting trust

---

[1] *Tricentral Oil Trading, Inc. v. Annesley*, 809 S.W.2d 218, (Tex. 1991); *see also Nolana Dev. Ass'n v. Corsi*, 682 S.W.2d 246, 250 (Tex. 1984) (recognizing that under Texas law a resulting trust is implied when someone other than the person in whose name title is taken pays the purchase price).

on HI A-96 in favor of the parties that provided the funds which the Debtor used to acquire HI A-96.

## ARGUMENTS & AUTHORITIES

**I.   Filing bankruptcy does not provide a debtor's estate with more rights in property than the debtor had prior to entering bankruptcy.**

3.   The Bankruptcy Code defines "property of the estate" to include "all legal or equitable interests of the debtor in property as of the commencement of the case."[2]  However, as § 541(d) establishes, a debtor retains legal title to the property, but does not gain equitable title merely because he has entered bankruptcy.

> "Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate under subsection (a)(1) or (2) of this section **_only to the extent of the debtor's legal title_** to such property, but not to the extent of any equitable interest in such property that the debtor does not hold."[3]

4.   To profit from 11 U.S.C. § 541(d), a party must demonstrate that state law impresses property that the debtor holds with an equitable interest in his favor that attached prior to bankruptcy.[4]  In *Sandoz v. Bennett (In re Emerald Oil Co.)*, the Fifth Circuit:

> noted that pursuant to § 541(d), a debtor's estate in bankruptcy does **_not_** include property in which the debtor holds bare legal title subject to the equitable interests of third parties.  Consequently, "[a]s a general rule, it must be held that section 541(d) prevails over the trustee's strong-arm powers.  Although these powers allow a trustee to assert rights that the debtor itself could not claim to property, Congress did not mean to authorize a bankruptcy estate to benefit from property that the debtor did not own." To profit from § 541(d), a party must demonstrate that state law impresses

---

[2]   11 U.S.C. § 541(a).
[3]   11 U.S.C. § 541(d) (emphasis added).
[4]   *Sandoz v. Bennett (In re Emerald Oil Co.)*, 807 F.2d 1234, 1238 (5th Cir. 1987) (citing *Vineyard v. McKenzie (In re Quality Holstein Leasing)*, 752 F.2d 1009 (5th Cir. 1985) (comparing § 541 and § 544 as to trustee strong-arm powers)) (finding no equitable interest under Louisiana state law).

property that the debtor holds with an equitable interest in his favor that attached prior to bankruptcy.[5]

## II. Texas law imposes a resulting trust in favor of the party that provided the purchase money for the property regardless of insider status.

5. Under Texas law, when title to property is taken in the name of an entity other than the one that provided the purchase money, a resulting trust is created in favor of the entity that advanced the money for the purchase.[6] The party providing the purchase money is deemed the equitable owner of the property, while the legal title holder is deemed "a mere trustee who holds for the benefit of those that furnished the consideration."[7] Property purchased by an agent in his own name, but with the principal's money, is held in trust for the benefit of the principal.[8] A resulting trust is implied in law when someone other than the person in whose name title is taken pays the purchase price.[9] This rationale holds regardless of whether the legal title holder and equitable title holder are insiders.

6. For example, in *Tricentrol Oil Trading, Inc. v. Annesley*, the Texas Supreme Court held that "[w]hen title to property is taken in the name of another other than the person who advances the purchase price, a resulting trust is created in favor of the payor."[10] In *Tricentrol*, the company provided its president with money to purchase two seats on the New York Mercantile Exchange. The exchange's rules prevented a company from owning the seats,

---

[5] *Id*. at 1238 (internal citations omitted) (emphasis added).
[6] *Tricentral Oil Trading, Inc.*, 809 S.W.2d 218; *see also Nolana Dev. Ass'n*, 682 S.W.2d at 250.
[7] *Osuna v. Quintana*, 993 S.W.2d 201, 210 (Tex. App.—Corpus Christi 1999, no writ) (finding that a resulting trust did arise for the benefit of the community marital estate and that the husband's mistress merely held legal title to the property the husband allegedly purchased for her with marital funds); *see also Morrison v. Farmer*, 213 S.W.2d 813, 815 (Tex. 1948) (finding that a resulting trust in favor of the Respondent was not created when the Respondent contributed a mere $400 to buy a house and Petitioner decided not to sell the property to Respondent).
[8] *Dixon v. Huggins*, 495 S.W.2d 621, 625 (Tex. Civ. App.—Waco, 1973, no writ) (holding that real property bought by agent with principal's money but held in agent's name was property of principal's probate estate because principal supplied purchase money for the property and agent merely held legal title to the property for the benefit of the principal according to Texas resulting trust law).
[9] *Nolana Dev. Assoc.*, 682 S.W.2d at 250 (recognizing that that the trustee of a resulting trust is responsible for "conveying the property to the beneficiary or in accordance with his directions" and deciding to not award damages against trustee when property was foreclosed upon due to all parties failure to make payments).

so the purchased seats were placed in the president's name. Upon the president's termination, the company requested he transfer the seats to a new representative. The president claimed an ownership interest in the seats. The Court determined that the company was in fact the equitable owner because it had provided its former president, an insider, with the money to purchase the seats with the intent that the president hold the seats for the company. The Court determined the former president, an insider, was trustee of a resulting trust for the beneficiary company.[11]

7.      Similarly, in *Hellmann v. Circle C. Properties, I, Ltd.*, Circle C loaned Alejos Interests Inc. ("AI") money to purchase certain property. The property was recorded in the AI's president's name – Alejos. Alejos later filed bankruptcy. The bankruptcy court found that the property was not property of Alejos's bankruptcy estate. "When title to property is taken in the name of someone other than the person who advances the purchase price, a resulting trust is created in favor of the payor."[12]  "Because the summary judgment evidence conclusively established that AI paid the purchase price for the Property while title was taken in Alejos's name [an insider], a resulting trust was created in AI's favor."[13]

### III.    The trustee of a resulting trust has a duty to transfer the property at the request of the beneficiary.

8.      Under Texas law, a trustee of a resulting trust does not have all of the duties of a normal trustee acting under an express trust. However, a trustee of a resulting trust does have a duty "to hold and convey the property according to the beneficiary's demands."[14]

9.      For example, in *Tricentrol*, the Court found that as a trustee, the former president could only perform at the direction of the company with regard to the seats.[15] Upon receipt of

---

[10]   *Tricentral Oil Trading, Inc.*, 809 S.W.2d at 220.
[11]   *Id.*
[12]   *Hellmann v. Circle C. Properties, I, Ltd.*, 2003 WL 22897220, *2 (Tex. App.—San Antonio 2003, no pet.).
[13]   *Id.*
[14]   *Tricentral Oil Trading, Inc.*, 809 S.W.2d at 221.
[15]   *Id.* at 221.

the company's instructions to transfer the seats, as trustee of the resulting trust, it was the president's duty to carry out the desires of the beneficiary.[16]

## IV. Bankruptcy law also supports transferring bare legal title to equitable title holders regardless of insider status.

10. When a debtor holds bare legal title to property, bankruptcy courts generally hold that the property should be transferred to the equitable title holder.[17] For example, in *In re DVI, Inc.*, the bankruptcy court in Delaware approved a motion brought by Chapter 11 debtors to transfer bare legal title in real property to the equitable owner – a non-debtor subsidiary/insider.[18] In that case, the debtor sold a loan secured by real property to a subsidiary. The debtor continued to service the loan and foreclosed on the property. The Sheriff's Deed was issued in the debtor's name instead of the subsidiary's name, the actual owner of the property. The chapter 11 debtors filed a motion seeking authority to transfer legal title in the real property to the subsidiary which would then sell the property to a third party. In granting the motion over an objection, the court stated:

> [T]o the extent the debtor had legal title to the property, it was bare legal title and did not have equitable ownership in the property that belonged to [the subsidiary] . . . .

and therefore permitted the debtor to transfer title to its non-debtor subsidiary, an insider.[19]

11. In *In re Wilder*, the bankruptcy court recognized that the debtors' parents held equitable title to a trailer and denied the chapter 7 trustee's motion to sell the trailer in which the

---

[16] *Id.* at 221. *See also Nolana Dev. Ass'n*, 682 S.W.2d 246 (recognizing that the trustee of a resulting trust is responsible for "conveying the property to the beneficiary or in accordance with his directions").

[17] *See Tex. Commerce Trust Co. v. Burrow, Jones, Rowton, Cates & Reppeto (In re Tex. Commerce Trust Co.)*, 16 B.R. 737, 740–41 (Bankr. N.D. Tex. 1982) (recognizing that "[u]nder the Bankruptcy Act, when it appeared that the debtor was a trustee holding bare legal title to trust assets, courts generally held that the debtor should turn the property over to its true owners where possible."). *See also In re Wilder*, 42 B.R. 6 (Bankr. D. Or. 1983) (denying trustee's motion to sell trailer in which debtors had mere legal title and debtors' parents had equitable title).

[18] *Guarino v. DVI Fin. Servs., Inc., et al.*, 324 B.R. 548, 500 (Bankr. D. Del. 2005).

[19] *Id.* at 550.

debtors held bare legal title.[20] Under Oregon's law regarding resulting trusts, which is similar to Texas law, the court found that the debtors' parents, insiders under the Bankruptcy Code, held equitable title in the trailer at issue despite the fact that the debtors held legal title as a result of the debtors financing the parents' acquisition of the trailer. In this case, the debtors obtained a loan to buy the trailer but the parents made monthly payments to the debtors for the loan payments and occupied the trailer as their residence. Thus, although the trustee could legally transfer title to trailer to a third party, any proceeds from the sale would inure to the benefit of the equitable owners, not the estate.[21]

12. Allowing the bankruptcy estate to retain property in which others hold the equitable interest creates a windfall to the estate's creditors to the detriment of the equitable title holders.[22] For example, in *Todd v. Pettit*, the Fifth Circuit affirmed a lower court ruling that a bankruptcy trustee lacked standing to seek turnover of trust assets wrongfully held by the debtor and recognized that

> when it appears that the bankrupt is only a trustee and has no beneficial interest in or claim against the property, ***the court ought to turn it over to its true owners where possible***.[23]

13. In *Todd v. Pettit*, the debtor managed two oil syndicates as trustee on behalf of beneficial owners. Two receivers were appointed in state court proceedings to administer the syndicates. The Fifth Circuit noted that beneficial interest holders in the syndicates were not necessarily creditors of the debtor and, therefore, the bankruptcy trustee had no ability to collect assets of the two trusts.

---

[20] *In re Wilder*, 42 B.R. 6.
[21] *Id.* at *8.
[22] *Tex. Commerce Trust Co.*, 16 B.R. at 740 (discussing *Todd v. Pettit*, 108 F.2d 139 (5th Cir. 1939)).
[23] *Todd v. Pettit*, 108 F.2d 139 (5th Cir. 1939) (emphasis added).

14. In discussing *Todd v. Pettit*, the Northern District of Texas Bankruptcy Court in *Tex. Commerce Trust Co. v. Burrow, Jones, Rowton, Cates & Reppeto (In re Tex. Commerce Trust Co.)*, recognized that:

> Allowing participation by both creditors and equitable owners in a distribution of assets would be to the detriment of the equitable owners. By affirming the lower court decision, the Fifth Circuit wisely assured the equitable owners of the trust assets that only they would receive any eventual distribution of trust assets still held by the debtor.[24]

15. Thus, in the *Texas Commerce* case, an unsecured creditor, who had no equitable interest in the trust fund the debtor serviced for the benefit of the fund's beneficiaries, was not entitled to assets of that fund.

## CONCLUSION

16. In conclusion, Debtor contends that insider status of one of the equitable titleholders in HI A-96 does not affect the determination that equitable titleholders are entitled to legal title as set forth in the Nominee Agreement and/or as provided by Texas law regarding resulting trusts. Resulting trusts have been recognized by bankruptcy courts in cases involving insiders. As such, the Court should grant Texas Standard Oil Company's *Motion for Authority to Perform Under Pre-Petition Nominee Agreement Regarding High Island A-96* and allow Texas Standard Oil Company to assign High Island A-96 per the Nominee Agreement or, in the alternative, the Court should allow the Debtor to transfer legal title in HI A-96 to the equitable titleholders in accordance with Texas law as recognized by bankruptcy courts.

---

[24] *Tex. Commerce Trust Co.*, 16 B.R. at 740.

        Respectfully submitted,

        */s/ Heather McIntyre*
        Wayne Kitchens  TBN 11541110
        David Askanase  TBN 01390000
        Heather McIntyre  TBN 24041076
        HUGHESWATTERSASKANASE, LLP
        333 Clay Street, 29th Floor
        Houston, Texas 77002
        Tel: 713.759.0818
        Fax: 713.759.6834
        COUNSEL FOR TEXAS STANDARD
        OIL COMPANY

        **CERTIFICATE OF SERVICE**

  I hereby certify that a true and correct copy of the foregoing document was served via ECF and/or first class US Mail, postage prepaid, on October 27, 2008, on the parties listed on the attached Service List as indicated.

        */s/ Heather H. McIntyre*
        Heather H. McIntyre

1319278-1:TSOC:0001

## SERVICE LIST

**Debtor**
Texas Standard Oil Company
9 Greenway Plaza, Suite 3040
Houston, Texas 77046-0919
*Via US Mail*

**Debtor's Counsel**
Wayne Kitchens, Esq./Heather McIntyre, Esq.
HughesWattersAskanase, LLP
333 Clay Street, 29th Floor
Houston, Texas 77002-4168
*Via ECF*

**U.S. Trustee**
Stephen D. Statham, Esq.
U.S. Trustee's Office
515 Rusk Street, Suite 3516
Houston, Texas 77002
*Via ECF*

**Parties Requesting Notice**
Bradley DeLuca, Esq./Brigid Ashcroft, Esq.
George A. Kurisky, Jr., Esq.
Johnson DeLuca Kennedy, et al.
1221 Lamar Street, Suite 1000
Houston, Texas 77010
*Via ECF*

John P. Dillman, Esq.
Linebarger Goggan Blair & Sampson, LLP
1301 Travis Street, Suite 300
Houston, Texas 77002-7430
*Via ECF*

Lawrence F. Labanowski, Esq.
Edward F. Mulholland
Lawrence F. Labanowski & Associates
3939 Essex, Suite 600
Houston, TX 77027
*Via ECF*

**Creditors**
Timothy Roberson
9 Greenway Plaza, Suite 3040
Houston, Texas 77046-0919
*Via US Mail*

Pat Johnson
9 Greenway Plaza, Suite 3040
Houston, Texas 77046-0919
*Via US Mail*

Langston Energy, LLC
9 Greenway Plaza, Suite 3040
Houston, Texas 77046-0919
*Via US Mail*

TXS 498 Corp.
9 Greenway Plaza, Suite 3040
Houston, Texas 77046-0919
*Via US Mail*

Spagnoletti & Co.
401 Louisiana, 8th Floor
Houston, TX 77002
*Via US Mail*

Edward R. Ziegler, PE
5063 Westheimer, Suite 810
Houston, TX 77056
*Via US Mail*

Texas Standard Oil & Gas, LP
9 Greenway Plaza, Suite 3040
Houston, Texas 77046
*Via US Mail*

**Parties in Interest**
Frankel Offshore Energy, Inc.
c/o Philip Nizialek, Esq.
1450 Lake Robbins Drive, Suite 300
The Woodlands, TX 77380
*Via US Mail*

1319278-1:TSOC:0001

Frankel Offshore Energy, Inc.
c/o Philip Nizialek, Esq.
Carver, Darden, Koretzky, Tessier, Finn,
Blossman & Areaux, LLC
1100 Poydras Street, Suite 3100
New Orleans, LA  70163
*Via US Mail*

Grimes Energy Company
Eleven Greenway Plaza, Suite 2902
Houston, Texas 77046
*Via U.S. Mail*

PetroVal, Inc.
2009 Huldy Street
Houston, Texas 77019
*Via US Mail*

1319278-1:TSOC:0001