UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In Re: | § § | |
| TEXAS STANDARD OIL COMPANY | § § | CASE NO. 08-34031-H4-11 |
| | § § | |
| Debtor | § | |

**FOREST OIL CORP., MARINER ENERGY, INC. AND
MARINER ENERGY RESOURCES, INC.'S OBJECTION TO
DEBTOR'S MOTION FOR ORDER APPROVING DISCLOSURE STATEMENT**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Forest Oil Corporation ("Forest"), Mariner Energy, Inc. ("MEI") and Mariner Energy Resources, Inc., ("MERI") (collectively "Creditors") file their Objection to Debtor's Motion for Order Approving Disclosure Statement.

**Introduction**

1. The Debtor, Texas Standard Oil Company ("TXSO"), seeks approval of its Disclosure Statement under 11 U.S.C. §1125. Creditors object to the Disclosure Statement because the Disclosure Statement does not contain necessary information regarding the escrow of money owed Creditors and TXSO's business in general; mischaracterizes the Final Judgment Creditors obtained in Case No. G-05-490; *Texas Standard Oil Company v. Forest Oil Corporation, et. al.,* In the United States District Court for the Southern District of Texas, Galveston Division (the "Underlying Lawsuit"); contains improper assumptions with regard to the appeal of the Underlying Lawsuit; fails to disclose that a $500,000.00 note receivable to the Debtor is owed by yet another insider corporation, MOSH Holdings L.P.; and does not provide information on why this note receivable may be paid in January 2009, even though the Plan of

Reorganization's (the "Plan) confirmation is contingent on repayment in full by MOSH Holdings L.P.

## Objection to Disclosure Statement

A. **Insufficient Information Regarding Escrow Account and Various Aspects of TXSO's Business**

2. TXSO indicates on pages 7 and 20 of the Disclosure Statement that it will escrow income for disputed claims, including those claims of Creditors, as part of its Plan. However, TXSO fails to disclose where such funds will be escrowed and who will have control of the escrowed funds. This information is necessary and the Disclosure Statement should be amended to include same.

3. At page 14 of the Disclosure Statement, TXSO notes that it filed its Motion to Employ The Kim Law Firm as special counsel, which motion was granted. However, the Disclosure Statement does not indicate how The Kim Law Firm will be paid. This information should be set forth in the Disclosure Statement.

4. TXSO notes its lack of capital resources on page 16 of the Disclosure Statement, but fails to disclose why it is in a better position now than it was when the lack of capital resources began or how it can continue to conduct business. Nowhere in the Disclosure Statement is any such information provided. The Disclosure Statement must be amended with this information.

5. While addressed in more detail, *infra*, TXSO repeatedly addresses the significant value of the appeal to the estate and the importance of the appeal to the bankruptcy filing and plan, but fails to address what the financial impact would be to TXSO should it lose the appeal and Creditors prevail. This information is material and should be set forth in the Disclosure Statement.

6. TXSO provides some insight into its business, but fails to provide needed information with regard to the $546,656.28 in notes receivable, such as who owes TXSO money, when such money will be repaid, and when and by whom the notes were executed. Disclosure Statement, p.9. This information must be set forth in the Disclosure Statement.

**B.  Mischaracterization of the Final Judgment**

7. On February 22, 2008, a Final Judgment in favor of Creditors was entered in the Underlying Lawsuit. A copy of the Final Judgment from the Underlying Lawsuit is attached hereto as Exhibit "A" and incorporated herein by reference. TXSO's Disclosure Statement mischaracterizes the relief afforded Creditors under the Final Judgment as well as the value and validity of Creditors claims.

8. The Disclosure Statement indicates that the District Court determined that TXSO owed FOC and MERI "only a fraction of the operating expenses they claimed." Disclosure Statement, p.11. This is an incorrect statement. FOC and MERI were awarded $452,419 in operating expenses, approximately fifty percent of the amount Creditors sought at trial. Further, Creditors (Appellants at the Fifth Circuit Court of Appeals) recently filed their Brief with the Fifth Circuit seeking a new trial as to the amount of operating expenses awarded. If a new trial is granted and Creditors prevail at trial, TXSO will owe in excess of $1,000,000 to Creditors for operating expenses through December 31, 2007. This will significantly impact Creditors of this Estate and should be disclosed.

9. The Disclosure Statement also indicates that MERI was not entitled to contractual damages. *Id.* In fact, MERI was awarded a judgment against TXSO in the amount of $428,316 for past due and owing operating expenses. See Exhibit "A." Clearly, MERI prevailed on its

claim for damages for breach of contract and is entitled to contractual damages. This information must be set forth in the Disclosure Statement.

10. TXSO also contends in its Disclosure Statement that MERI and MEI's claims are duplicative of amounts included in the Final Judgment rendered in the Underlying Lawsuit or are not presently due and payable under the applicable contracts. Disclosure Statement, p.15. This statement is incorrect. The claims filed by MERI and MEI are not duplicative of the amount awarded in the Final Judgment, and the amounts sought are due and owing as established in Creditors' Motion and Memorandum of Law in Support of Claim for Payment of Administrative Expenses filed herein on November 24, 2008. TXSO has simply continued to fail and refused to make payment.

11. The Disclosure Statement also indicates that the jury "found in favor of the Debtor as to the proper accounting method." Disclosure Statement, p.10, 11. There is no such finding in the jury verdict or resulting Final Judgment. See Exhibit "A." Further, the Judgment is *not* in the Debtor's favor. The Creditors were the prevailing parties.

12. TXSO also boldly asserts in the Disclosure Statement that based "on information and belief, MERI continues to engage in improper accounting despite the February 2008 Judgment in the Debtor's favor." *Id.* MERI did not and is not engaging in improper accounting practices. Further, since there has been no production on the High Island 552 Property for some time, the accounting about which TXSO originally complained *does not even come into play* because the alleged accounting errors had to do with how production and the associated costs were allocated. Thus, an allegation of improper accounting, even on information and belief, is inaccurate and must be reflected in the Disclosure Statement.

13. On pages 15 and 20 of the Disclosure Statement, TXSO correctly notes that FOC's claim is for $878,153.43, while the amount awarded to FOC in the District Court is $32,007.21[1]. TXSO then asserts that "the jury specifically denied the recovery which FOC is now seeking via its proof of claim." While this is true, the issue of whether Creditors are entitled to a new trial as to the operating expenses owed and the failure of the jury to award Creditors, as the prevailing parties, their attorney's fees is presently before the Fifth Circuit. Creditors contend, as a matter of law, that they are entitled to the full amount of operating expenses owed, as well as their attorney's fees. An award of this magnitude greatly impacts the Creditors and should be set forth in the Disclosure Statement.

14. TXSO also notes on pages 15 and 21 of the Disclosure Statement that MERI and MEI's claim is currently $5,837,959.35, while the judgment amount is $428,316, and that the "jury specifically denied portions of the claims filed." Once again, the issue of whether TXSO owes the full amount of operating expenses is on appeal to the Fifth Circuit. Should Creditors prevail at the Fifth Circuit, and prevail at trial, the judgment amount through December 31, 2007 would be $818,824.00. This information should be included in the Disclosure Statement.

15. The remaining approximately $5,000,000 claim of MERI and MEI is for plug and abandonment (P&A) liability on the High Island 552 Property and the West Delta 34 Property, a process which has already begun with regard to High Island. Charles Sharman, President of TXSO, admitted at the trial in the Underlying Lawsuit that TXSO was liable for P&A liability. See Transcript of Trial, p. 397:24 - 398:5, attached hereto as Exhibit "B" and incorporated herein by reference. Thus, TXSO's assertion that these claims are "not presently due" or were "denied" in the Underlying Lawsuit are inaccurate and the Disclosure Statement must be

---

[1] The Final Judgment indicates that FOC shall recover operating expenses from TXSO in the amount of $24,103. The District Court later awarded FOC costs of Court which brings the total figure owed by TXSO to FOC to $32,007.21.

amended to reflect this.

16. TXSO also contends on page 17 of the Disclosure Statement that it prevailed on the proper accounting for High Island 552 and West Delta 34. For the reasons outlined, *supra*, this statement is incorrect and should not be included on the Disclosure Statement.

17. TXSO also contends on page 17 of the Disclosure Statement that Creditors "refused to segregate their attorneys [sic] fees between the forfeiture issues and the accounting issues." This statement is incorrect and should not be included on the Disclosure Statement.

18. TXSO took great liberty in interpreting the Final Judgment in a manner which is misleading to all creditors of the estate. Creditors request that the Disclosure Statement be revised in a manner consistent with the Final Judgment and/or make reference to Creditors' position with regard to the Final Judgment.

### C. Improper Assumptions with Regard to the Appeal to the Fifth Circuit

19. On March 9, 2008, Creditors appealed the Final Judgment and two rulings in the district court's earlier rendered Summary Judgment Order. The case on appeal is styled No. 08-40390; *In re Forest Oil Corp., et al., Defendant/Appellant, Cross-Appellee v. Texas Standard Oil Company, Plaintiff/Appellee, Cross-Appellant*; United States Court of Appeals for the Fifth Circuit (the "Appeal"). TXSO makes numerous unsubstantiated assumptions with regard to the Appeal and misstates the effect of potential rulings by the Fifth Circuit.

20. TXSO contends in its Disclosure Statement that the "Appeal is a significant asset to the estate" without providing any information as to why or how it may become an asset, or how this alleged asset is valued. Disclosure Statement, p.12[2]. Additional information is necessary to determine if the Appeal is an asset of the estate and how it is such an asset.

---

[2] TXSO notes on page 10 of the Disclosure Statement that the appeal is valued at $2,000,000. However, TXSO provides no support for why such a value is given other than a reference to pages 10 – 13, which do not indicate how such a value was determined.

21. Creditors contend that the Appeal does not have the potential to become an asset of the estate, no matter the outcome. Even if TXSO prevails on the Appeal and obtains an interest in the West Delta 34 number 12 well, upon which Creditors surmise TXSO makes its allegation that the Appeal is an asset, TXSO will owe the associated costs and expenses of the re-work of the Number 8 well in addition to the operating expenses incurred on the Number 12 well. These expenses will result in TXSO **owing Creditors money**, not in the estate receiving income. This information should be set forth in the Disclosure Statement.

22. Furthermore, this alleged "asset" is both speculative and premature. *If* TXSO prevails on appeal, which Creditors contend is highly unlikely, the Fifth Circuit *may* render a verdict on some issues, but a new trial would be required on others. This process could take years before the ultimate outcome is known. Nowhere in the Disclosure Statement is that time-line made known.

23. TXSO also makes bold assertions regarding the "Fifth Circuit enforc[ing] the accounting proposed by the Debtor related to the West Delta 34 property and implicitly adopted by the jury in the Final Judgment." *Id.* Once again, the jury did not rule upon any accounting issues so the Fifth Circuit can not "enforce" such a finding.

24. The Disclosure Statement indicates that the Appeal is a significant asset of the estate without providing any information to support such a claim. Further, the Disclosure Statement does not provide any information regarding the speculative nature of such a claim, or the lengthy period of time before such an "asset" would be available to the estate. Creditors request that the Disclosure Statement be revised to include this information.

### D.  Note Receivable from MOSH Holding, L.P.

25. TXSO indicates in the Disclosure Statement that it has a note receivable due from MOSH Holding L.P. ("MOSH") that Debtor expects to be paid in full in January 2009. Disclosure Statement, p.16. What Debtor fails to disclose is that the general partner of MOSH is MOSH Holding I, L.L.C, ("MOSH L.L.C."). The Director and Managing Member of MOSH L.L.C. is Timothy Roberson, a fifty percent owner of TXSO. Information regarding MOSH and MOSH L.L.C. is attached hereto as Exhibit "C" and incorporated herein by reference.

26. Once again, an insider corporation is at issue in this bankruptcy proceeding. This insider owes TXSO approximately $500,000, a sizeable asset of the estate. Additional information regarding the terms of the note receivable and the insider nature of the transaction is pertinent to the creditors of the estate and should be disclosed.

27. TXSO also asserts that it expects this note to be paid in full in January 2009. Disclosure Statement, p.16. However, it fails to disclose upon what basis it has this expectation. This information is essential as TXSO admits that the Plan "may only be confirmed if Debtor receives payment in full from MOSH." Disclosure Statement, p.27. Such information must be set forth in the Disclosure Statement.

28. Creditors request that the Disclosure Statement be revised to include the pertinent information regarding MOSH and payment of the note receivable.

### E. Creditors Reserve Any and All Objections to TXSO's Plan of Reorganization

29. TXSO sets forth a general overview of the proposed Plan in its Disclosure Statement. Creditors will object to TXSO's Plan on the basis that the Plan is not feasible; that TXSO cannot reject the High Island Joint Operating Agreement; that TXSO has improperly classified Creditors' claims; and that TXSO contends that Creditors, the largest creditors of

TXSO, have no voting rights, among other objections. *Creditors hereby reserve these objections as well as any and all objections they have or may have to such plan.* Creditors' objections will be filed to the proposed Plan at the appropriate time.

WHEREFORE, Forest Oil Corporation, Mariner Energy Inc. and Mariner Energy Resources, Inc. pray that the Court deny Debtor's Motion for Order Approving Disclosure Statement unless and until such time as the Disclosure Statement is revised as set forth in this Motion. Forest Oil Corporation, Mariner Energy Inc. and Mariner Energy Resources, Inc. also pray for such further relief to which they are justly entitled.

Respectfully submitted,

/s/ Bradley L. DeLuca
Bradley L. DeLuca
SBT No. 05653800
George A. Kurisky
SBT No: 11767700

**ATTORNEYS FOR FOREST OIL COMPANY, MARINER ENERGY, INC. AND MARINER ENERGY RESOURCES, INC.**

OF COUNSEL:
**JOHNSON DELUCA KENNEDY & KURISKY, P.C.**
4 Houston Center
1221 Lamar Street, Suite 1000
Houston, Texas 77010
(713) 652-2525 Telephone
(713) 652-5130 Facsimile

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served via ECF and or First Class Mail on the 19th day of December, 2008, to the following:

All parties on the attached service list.

/s/ Bradley L. DeLuca
Bradley L. DeLuca