**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **Case No. 08-34031** |
| | § | |
| **TEXAS STANDARD OIL COMPANY,** | § | **Chapter 11** |
| | § | |
| **Debtor.** | § | |

**DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION**
**UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE**

Wayne Kitchens, Esq.
David Askanase, Esq.
Heather McIntyre, Esq.
**HughesWattersAskanase, LLP**
Three Allen Center
333 Clay Street, 29th Floor
Houston, Texas 77002
Tel: 713.759.0818
Fax: 713.759.6834

**ATTORNEYS FOR TEXAS STANDARD**
**OIL COMPANY**

Dated: January 19, 2009.

EXHIBIT
A

### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case No. 08-34031 |
| | § | |
| **TEXAS STANDARD OIL COMPANY,** | § | **Chapter 11** |
| | § | |
| Debtor. | § | |

### DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION UNDER
### CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE

This First Amended Plan of Reorganization Under Chapter 11 of the United States Bankruptcy Code (the "Plan") is proposed by Texas Standard Oil Company, a Texas Corporation ("Debtor") pursuant to Sections 1121(a) and 1127, Title 11, United States Code, as follows:

### DEFINITIONS

Unless the context otherwise requires, the following capitalized terms shall have the following meanings in this Plan. Such meanings shall be equally applicable to both the singular and plural forms of such terms. The words "herein," "hereof," "hereunder" and other words of similar import refer to this Plan as a whole and not to any particular section, subsection or clause contained in this Plan unless the context requires otherwise. Whenever it appears appropriate from the context, each term stated in either the singular or the plural includes the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender include the masculine, feminine and neuter. Any capitalized term in this Plan which is not defined herein shall have the meaning assigned to such term by the Bankruptcy Code or the Bankruptcy Rules.

### ARTICLE 1

**1.1     Adjusted Amount:** With respect to a Disputed Claim, (a) to the extent such Disputed Claim is a liquidated Claim, the maximum liquidated face amount of such Disputed Claim as asserted in the relevant proof of claim or such other amount as the Bankruptcy Court shall have determined on or prior to Effective Date, in accordance with the Bankruptcy Code is adequate for determining the amount of Cash to be deposited in the Disputed Claims Reserve Account on account of such Disputed Claim; and (b) to the extent that such Disputed Claim is a contingent or unliquidated Claim, an amount that the Bankruptcy Court determines on or prior to Effective Date, in accordance with the Bankruptcy Code is adequate for determining the amount of Cash to be deposited in the Disputed Claims Reserve Account on account of such Disputed Claim; in each case, such amount shall be the maximum allowable amount of such Claim unless the Bankruptcy Court shall order otherwise.

**1.2     Administrative Claims Bar Date:** Thirty (30) days after the Effective Date.

**1.3     Administrative Claim:** A Claim for payment of an administrative expense of a kind specified in Section 503(b) of the Bankruptcy Code and referred to in Sections 507(a)(1) and 1114 of the Bankruptcy Code, including, without limitation, the actual, necessary costs and expenses incurred after the commencement of the Chapter 11 Case for preserving the estate and operating the business of the Debtor including wages, salaries or commissions for services, compensation for legal and other services and reimbursement of expenses awarded under Sections 330(a) or 331 of the Bankruptcy Code, costs of providing notices and ballots in connection with the Plan and of making distributions hereunder, taxes incurred after the Petition Date, and all fees and charges assessed against the estate under Chapter 123, Title 28, United States Code.

**1.4     Allowed Federal Tax Claim:** All or that portion of a Federal Tax Claim that has become an Allowed Claim.

**1.5     Allowed General Unsecured Claim:** All or that portion of a General Unsecured Claim that has become an Allowed Claim. "Allowed General Unsecured Claim" shall not include interest on the principal amount of such claim or attorneys' fees after the Petition Date.

**1.6     Allowed Administrative Claim:** All or that portion of an Administrative Claim which (a) has become an Allowed Claim or (b) was incurred by the Debtor in the ordinary course of business during the Chapter 11 Case and is undisputed.

**1.7     Allowed Claim:** All or that portion of a Claim, other than a Disputed Claim, as to which (a) on or by the Bar Date (i) no proof of claim was filed with the Bankruptcy Court to evidence such Claim and (ii) the liquidated and noncontingent amount is scheduled by the Debtor pursuant to the Bankruptcy Code as undisputed; (b) a proof of claim has been filed in a liquidated amount with the Court on or before the Bar Date or, in the case of an Administrative Claim subject to the Administrative Claims Bar Date, a proof of Administrative Claim has been filed on or before the Administrative Claims Bar Date, provided that (i) no objection to the allowance of such Claim or a motion to expunge such Claim has been interposed on or prior to the applicable Claims Objection Deadline or (ii) if such objection or motion has been filed, such Claim has been allowed in whole or in part by a Final Order; (c) a stipulation to the amount of such Claim has been signed by the Debtor and the respective Creditor and approved by a Final Order; or (d) is otherwise deemed allowed under this Plan.

**1.8     Allowed Priority Claim:** All or that portion of a Priority Claim that has become an Allowed Claim.

**1.9     Allowed Secured Ad Valorem Tax Claim:** All or that portion of a Secured Ad Valorem Tax Claim that has become an Allowed Claim.

**1.10     Allowed Secured Claim:** All or that portion of a Secured Claim that (a) has become an Allowed Claim and as to which the Lien securing same is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or other applicable non-

bankruptcy law; (b) which is duly established in the Chapter 11 Case, but only to the extent of the value of the interest of the holder of such Secured Claim in the Debtor's interest in the Assets which the Bankruptcy Court finds to be valid Collateral for such Claim (except if the class of which such Claim is a part validly and timely makes the election provided for in Section 1111(b)(2) of the Bankruptcy Code, in which case the entire amount of the Allowed Claim shall be an Allowed Secured Claim); and (c) less all payments which have been made to the holder of such Claim on account of such Claim on or after the Petition Date.

**1.11    Appeal:** Case No. 08-40390; *Texas Standard Oil Company v. Forest Oil Corporation, et al.* pending before the Fifth Circuit Court of Appeal.

**1.12    Assets:** All right, title and interest in and to any and all property of every kind or nature, owned by the Debtor as of the Effective Date, including, but not limited to, property as defined in Section 541 of the Bankruptcy Code (each identified item of property being herein sometimes referred to as an "asset") including, without limitation, Causes of Action, and Debtor's interest in applicable insurance policies.

**1.13    Balloting Agent:** Heather McIntyre.

**1.14    Bankruptcy Code:** The Bankruptcy Reform Act of 1978, as amended and codified in Title 11, United States Code.

**1.15    Bankruptcy Court or Court:** The unit of the United States District Court for the Southern District of Texas, Houston Division, having jurisdiction over the Chapter 11 Case, or in the event such court ceases to exercise jurisdiction over the Chapter 11 Case, such court or adjunct thereof which exercises jurisdiction over the Chapter 11 Case in lieu of such unit of the United States District Court for the Southern District of Texas.

**1.16    Bankruptcy Rules:** The Federal Rules of Bankruptcy Procedure, as amended and prescribed under 28 U.S.C. § 2075, as applicable to the Chapter 11 Case, together with the Local Rules of the Bankruptcy Court.

**1.17    Bar Date:** The final date for the filing of proofs of Claims in the Chapter 11 Case, set by the Bankruptcy Court as October 29, 2008, or such other date as may apply to a particular Claim pursuant to a duly-entered order of the Bankruptcy Court.

**1.18    Business Day:** Any day other than a Saturday, Sunday or "legal holiday" as defined in Bankruptcy Rule 9006(a).

**1.19    Cash:** Cash and cash equivalents including without limitation, bank deposits, checks, government securities, and other similar items.

**1.20    Causes of Action:** Any and all causes of action, claims, rights of action, suits or proceedings, whether in law or equity, whether known or unknown, which have been or could be

asserted, by the Debtor, including, without limitation, causes of action under Sections 542, 543, 544, 545, 546, 547, 548, 549, 550, or 553(b) of the Bankruptcy Code.

**1.21**     **Chapter 11 Case:**  The case under Chapter 11 of the Bankruptcy Code in which Debtor is the Debtor-in-Possession.

**1.22**     **Claim:**  As defined in Section 101(5) of the Bankruptcy Code.

**1.23**     **Claimant or Creditor:**  A Person asserting a Claim.

**1.24**     **Claims Objection Deadline:**  Sixty (60) days after the Effective Date.

**1.25**     **Class:**  A group of Claims or Interests as classified by the Plan.

**1.26**     **Collateral:**  Any Asset subject to a valid and enforceable Lien securing the payment of a Claim.

**1.27**     **Confirmation Date:**  The date of entry by the Bankruptcy Court of the Confirmation Order on the docket of the Bankruptcy Court.

**1.28**     **Confirmation Order:**  An order of the Bankruptcy Court and any amendment thereto confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code including Section 1129 of the Bankruptcy Code.

**1.29**     **Debtor:**  Texas Standard Oil Company as Debtor and Debtor-in-Possession in the Chapter 11 case.

**1.30**     **Discharge or Discharged:**  Except as otherwise provided in the Plan, the release and discharge of the Debtor of any and all Claims and obligations, liabilities, responsibilities, burdens, debts, or contingencies given rise to the same, arising out of, or related to, any Claim, including the discharge of all Claims and matters referred to, or relating to matters Discharged by operation of Bankruptcy Code sections 349, 502, 523, 524, 727, 1141 and 1144 and 28 U.S.C. § 157. It shall be conclusively determined by confirmation of the Plan as evidenced by the Confirmation Order that Debtor shall be deemed as of the Confirmation Date to be continuing to engage in business pursuant to section 1141(d)(3)(B) of the Bankruptcy Code.

**1.31**     **Disclosure Statement:**  The Disclosure Statement, as amended, issued in connection with the Plan, and approved by the Bankruptcy Court, together with all supplements thereto approved by the Bankruptcy Court.

**1.32**     **Disputed Claim:**  A Claim against the Debtor as to which an objection or motion pursuant to Section 502 of the Bankruptcy Code has been timely filed, which objection or motion has not been withdrawn or resolved by entry of an order of the Bankruptcy Court.  To the extent that such objection or motion relates to the allowance of any part of a Claim, such Claim shall be a Disputed Claim only to the extent of the objection or motion.  Prior to the time that an objection has been or

may be timely filed, for the purposes of the Plan, a Claim shall be considered a Disputed Claim to the extent that (a) the Debtor's Schedules do not list such Claim or list such Claim as contingent, unliquidated, or disputed, or (b) the amount of the Claim specified in the relevant proof of claim exceeds the amount that the Debtor's Schedules list as undisputed, liquidated and not contingent.

**1.33**   **Distributions:**   The Cash and Assignments required by the Plan to be delivered to the holders of Allowed Claims.

**1.34**   **Effective Date:**   Thirty (30) days after order confirming the Plan becomes a Final Order.

**1.35**   **Fee Claim:**   A Claim for professional fees and expenses under Sections 330 or 503 of the Bankruptcy Code in the Chapter 11 case.

**1.36**   **Final Order:**   An order or judgment of the Bankruptcy Court (or any other Court of competent jurisdiction) which is conclusive of all matters adjudicated thereby and is in full force and effect and has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been filed has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

**1.37**   **General Unsecured Claims:**   Any and all Claims held by Creditors of the Debtor which Claims are not secured by Assets of the Debtor, including, but not limited to, Deficiency Claims, Claims arising from rejection of executory contracts and unexpired leases which are not otherwise secured by Liens, and Claims arising from litigation or suits against Debtor.   For purposes of the definition, "Unsecured Claims" do not include Administrative Claims, Priority Claims, Priority Tax Claims, or Secured Claims.

**1.38**   **Lien:**   As defined in Section 101(37) of the Bankruptcy Code.

**1.39**   **Mariner:**   Mariner Energy Resources, Inc. and/or Mariner Energy, Inc. a/k/a MER and/or MEI respectively.

**1.40**   **Mariner Lawsuit:**   Case No. G-05-490 *Texas Standard Oil Company v. Forest Oil Corporation, et al.* in the United States District Court for the Southern District of Texas, Houston Division.

**1.41**   **Person:**   An individual, corporation, partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization or governmental entity or any particular subdivision thereof or other entity.

**1.42**   **Petition Date:**   June 26, 2008, the date of filing of the Chapter 11 Case by the Debtor.

**1.43**   **Plan:**   This Plan of Reorganization and all exhibits and schedules annexed hereto or referred to herein, either in its or their present form(s) or as it or they may be altered, amended, or modified from time to time.

**1.44    Priority Claim:** Any Claim entitled to priority in payment under Sections 507(a)(3) through 507(a)(7) of the Bankruptcy Code.

**1.45    Priority Tax Claim:** Any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

**1.46    Pro Rata Share:** The proportion, calculated after the date on which all Disputed Claims within a particular Class and all other Disputed Claims potentially within such Class have been either allowed or disallowed by Final Order, that a given Allowed Claim in such Class bears to the amount of all Allowed Claims within such Class.

**1.47    Reorganized Debtor:** From and after the Effective Date, Venice Production Company f/k/a Texas Standard Oil Company as reorganized pursuant to this Plan and shall be, like its predecessor Texas Standard Oil Company, a Texas corporation.

**1.48    Reserve Amount:** The amount of Cash required to be deposited in the Disputed Claims Reserve Account on account of a Disputed Claim or Claims, in each case determined on the basis of the Adjusted Amount of such Disputed Claim or Claims.

**1.49    Schedules:** The Schedules and Statement of Affairs, as amended, filed by the Debtor with the Bankruptcy Court listing liabilities and assets.

**1.50    Secured Claim:** A Claim subject to setoff under Section 553 of the Bankruptcy Code or secured by a Lien on Assets of the Debtor which Lien is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law and which is duly established in the Chapter 11 Case, but only to the extent of the value of the Collateral that secures payment of the Claim or to the extent of the amount subject to setoff, as the case may be.

**1.51    Secured Creditor:** The holder of a Secured Claim.

**1.52    Texas Standard Oil Corporation ("Debtor"):** A Texas corporation and Debtor in the Chapter 11 case whose name will be changed to Venice Production Company as of the Effective Date.

**1.53    Unclaimed Distribution:** Any Distribution (together with any interest earned thereon) which is unclaimed six (6) months following the date on which the Reorganized Debtor makes or attempts to make payment in respect of such Distribution. Unclaimed Distributions shall include (a) checks (and the funds represented thereby) that have been returned as undeliverable without a proper forwarding address, (b) funds for checks that have not cleared, and (c) checks (and the funds represented thereby) that were not mailed or delivered because of the absence of a proper address to which to mail or deliver such property.

**1.54    Unsecured Claims:** Any and all Claims held by Creditors of the Debtor which Claims are not secured by Assets of the Debtor, including, but not limited to, Deficiency Claims, Claims arising

from rejection of executory contracts and unexpired leases which are not otherwise secured by Liens, and Claims arising from litigation or suits against Debtor. For purposes of the definition, "Unsecured Claims" do not include Administrative Claims, Priority Claims, Priority Tax Claims, or Secured Claims.

**1.55    Unsecured Creditor:** Any Creditor that holds an Unsecured Claim.

**1.56    Voting Deadline:** The date set by the Bankruptcy Court by which the Balloting Agent must receive ballots for accepting or rejecting the Plan.

## ARTICLE 2

## CLASSIFICATION OF CLAIMS AND INTERESTS

**2.1    Classification Generally:** All Claims and Equity Interests are placed in the following Classes. A Claim or Equity Interest is classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of the Class and is classified in a different Class to the extent that the Claim or Equity Interest qualifies within the description of that Class. A proof of Claim or Equity Interest which asserts a Claim or an Equity Interest which is properly includible in more than one Class is in the Class asserted only to the extent it qualifies within the description of such Class and is in a different Class to the extent it qualifies within a description of such different Class.

## ARTICLE 3

## CLASSIFIED CLAIMS

## PRIORITY CLAIMS

Class 1:        Allowed Administrative Expense Claims

Class 3:        Allowed Federal Tax Claims

Class 4:        Allowed Priority Wage Claims

## SECURED CLAIMS

Class 2:        Allowed Secured Ad Valorem Tax Claims

Class 5:        Allowed Secured Claim of Forest Oil Corporation

Class 6:        Allowed Secured Claim of Mariner Energy, Inc./Mariner Energy Resources, Inc.

## UNSECURED CLAIMS

Class 7:        Allowed General Unsecured Claims

Class 8:      Allowed Claims Related to High Island A-96

### EQUITY INTERESTS

Class 9:      Ownership Interests

### ARTICLE 4

### PROVISIONS FOR PAYMENT OF ALLOWED
### ADMINISTRATIVE EXPENSE CLAIMS (CLASS 1)

**4.1      Allowed Administrative Expense Claims:**  Unless otherwise agreed, each Allowed Administrative Expense Claim shall be paid in full in Cash and Discharged by no later than the later of (a) the Effective Date or (b) fifteen (15) days after the Administrative Expense Claim becomes an Allowed Administrative Expense Claim; provided, however, that Allowed Administrative Expense Claims that represent undisputed liabilities incurred by the Debtor in the ordinary course of business during the Chapter 11 Case shall be paid in the ordinary course of business in accordance with any related agreements.

**4.2      Bar Date for Administrative Claims:**  The holder of an Administrative Claim other than (i) an Allowed Administrative Claim or (ii) an Administrative Claim that represents a liability incurred by the Debtor in the ordinary course of business, must (a) file a proof of Administrative Claim (or, in the case of a Fee Claim, an application seeking the Bankruptcy Court's approval of such Fee Claim) on or before the Administrative Claims Bar Date and (b) serve a copy of such proof of Administrative Claim or the application for the approval of such Fee Claim upon the parties set forth in the order of the Bankruptcy Court establishing the Administrative Claims Bar Date.  Failure to timely file such proof of Administrative Claim (or application) shall result in the Administrative Claim being forever barred and discharged. An Administrative Claim other than a Fee Claim, proof of which has been timely filed, shall become an Allowed Administrative Claim if no objection thereto is filed within thirty (30) days after the later of the Confirmation Date and the date of filing and service of such proof of Administrative Claim or application, as the case may be.  If an objection is filed within such thirty (30) day period, the Administrative Claim shall only become an Allowed Administrative Claim to the extent allowed by Final Order.  A Fee Claim with respect to which an application is timely filed shall become an Allowed Administrative Claim only to the extent allowed by Final Order.  Notwithstanding the foregoing, for reasonable services rendered after the Confirmation Date, the Reorganized Debtor shall promptly pay any professional person retained by the Debtor upon submission of proper written invoices detailing the reasonable services rendered and expenses incurred for which compensation or reimbursement is sought.

**4.3      Status of Class:**  Class 1 is unimpaired. Therefore, votes for acceptance or rejection of the Plan from members of such Class will not be solicited.

## ARTICLE 5

### PROVISIONS FOR PAYMENT OF ALLOWED SECURED
### AD VALOREM TAX CLAIMS (CLASS 2)

**5.1**   **Allowed Secured Ad Valorem Tax Claims:**  Unless otherwise agreed, each Allowed Ad Valorem Tax Claim shall be paid in full in Cash and Discharged by no later than the later of (a) the Effective Date or (b) fifteen (15) days after the Secured Ad Valorem Tax Claim becomes an Allowed Secured Ad Valorem Tax Claim.

**5.2**   **Release of Lien:**  The transfer of Collateral and/or proceeds pursuant to Article 5.1 shall be in full satisfaction and Discharge of Class 2 Claims and Class 2 claimants shall promptly provide all such documents to release liens and security interest.

**5.3**   **Status of Class:**  Class 2 is unimpaired. Therefore, votes for acceptance or rejection of the Plan from members of such Class will <u>not</u> be solicited.

## ARTICLE 6

### PROVISIONS FOR PAYMENT OF ALLOWED
### FEDERAL TAX CLAIMS (CLASS 3)

**6.1**   **Allowed Federal Tax Claims:**  Unless otherwise agreed, each Federal Tax Claim shall be paid in full in Cash and Discharged by no later than the later of (a) the Effective Date or (b) fifteen (15) days after the Federal Tax Claim becomes an Allowed Federal Tax Claim.

**6.2**   **Status of Class:**  Class 3 is unimpaired.  Class 3 is unimpaired. Therefore, votes for acceptance or rejection of the Plan from members of such Class will <u>not</u> be solicited.

## ARTICLE 7

### PROVISIONS FOR PAYMENT OF ALLOWED
### PRIORITY WAGE CLAIMS (CLASS 4)

**7.1**   **Allowed Priority Wage Claims:**  Unless otherwise agreed, each Priority Wage Claim shall be paid in full in Cash and Discharged by no later than the later of (a) the Effective Date or (b) fifteen (15) days after the Priority Wage Claim becomes an Allowed Priority Wage Claim.

**7.2**   **Status of Class:**  Class 4 is not impaired. Class 4 is unimpaired. Therefore, votes for acceptance or rejection of the Plan from members of such Class will <u>not</u> be solicited.

## ARTICLE 8

## PROVISIONS FOR TREATMENT OF
## ALLOWED SECURED CLAIM OF FOREST OIL CORPORATION (CLASS 5)

**8.1**    **Allowed Secured Claim of Forest Oil Corporation:**  Unless otherwise agreed, at the Debtor's election to occur within thirty (30) days of the later date of (i) final determination of the issues on Appeal, or (ii) the Claim of Forest Oil Corporation becoming an Allowed Secured Claim of Forest Oil Corporation, the Debtor will elect to either (i) transfer collateral in full satisfaction of the Allowed Claim of Forest Oil Corporation, or (ii) pay the Allowed Claim of Forest Oil Corporation in full.

Until the issues on Appeal are resolved and the Claim of Forest Oil Corporation becomes an Allowed Claim, the Debtor will pay (i) an initial deposit of $16,000.00 within thirty (30) days of the Effective Date, and (ii) monthly installments of $2,000.00 thereafter into an escrow account until the escrow account obtains a balance of $32,007.21 for the benefit of Forest Oil Corporation to be distributed to Forest Oil Corporation upon the Debtor's election to pay the Allowed Claim of Forest Oil Corporation in full.

In addition, within thirty (30) days of the Effective Date, the Debtor will pay interest on $32,007.21 at a rate of three percent (3%) per annum (which is in excess of the current rate of 1.12%) which amount shall be deposited into the escrow account to be distributed to Forest Oil Corporation upon the Debtor's election to pay the Allowed Claim of Forest Oil Corporation in full.

**8.2**    **Release of Lien:**  The transfer of Collateral and/or proceeds pursuant to Article 8.1 shall be in full satisfaction and Discharge of Class 5 Claims and Class 5 claimants shall promptly provide all such documents to release liens and security interest.

**8.3**    **Status of Class:**  Class 5 is not impaired.  Therefore, votes for acceptance or rejection of the Plan from members of such Class will not be solicited.

## ARTICLE 9

## PROVISIONS FOR TREATMENT OF ALLOWED SECURED CLAIM OF
## MARINER ENERGY, INC./MARINER ENERGY RESOURCES, INC. (CLASS 6)

**9.1**    **Allowed Secured Claim of Mariner Energy, Inc./Mariner Energy Resources, Inc.:**  Unless otherwise agreed, at the Debtor's election to occur within thirty (30) days of the later date of (i) final determination of the issues on Appeal, or (ii) the Claim of Mariner Energy, Inc./Mariner Energy Resources, Inc.  becoming an Allowed Secured Claim of Mariner Energy, Inc./Mariner Energy Resources, Inc., the Debtor will elect to either (i) transfer collateral in full satisfaction of the Allowed Claim of Mariner Energy, Inc./Mariner Energy Resources, Inc., or (ii) pay the Allowed Claim of Mariner Energy, Inc./Mariner Energy Resources, Inc. in full.

Until the issues on Appeal are resolved and the Claim of Mariner Energy, Inc./Mariner Energy Resources, Inc. becomes an Allowed Claim, the Debtor will pay (i) an initial deposit of $214,000.00 within thirty (30) days of the Effective Date, and (ii) monthly installments of $26,750.00 thereafter into an escrow account until the escrow account obtains a balance of $428,316.00 for the benefit of Mariner Energy, Inc./Mariner Energy Resources, Inc. to be distributed to Mariner Energy, Inc./Mariner Energy Resources, Inc. upon the Debtor's election to pay the Allowed Claim of Mariner Energy, Inc./Mariner Energy Resources, Inc. in full.

In addition, within thirty (30) days of the Effective Date, the Debtor will pay interest on $428,316.00 at a rate of three percent (3%) per annum (which is in excess of the current rate of 1.12%) which amount shall be deposited into the escrow account to be distributed to Mariner Energy, Inc./Mariner Energy Resources, Inc. upon the Debtor's election to pay the Allowed Claim of Mariner Energy, Inc./Mariner Energy Resources, Inc. in full.

**9.2    Release of Lien:** The transfer of Collateral and/or proceeds pursuant to Article 9.1 shall be in full satisfaction and Discharge of Class 6 Claims and Class 6 claimants shall promptly provide all such documents to release liens and security interest.

**9.3    Status of Class:** Class 6 is not impaired. Therefore, votes for acceptance or rejection of the Plan from members of such Class will <u>not</u> be solicited.

## ARTICLE 10

### PROVISIONS FOR TREATMENT OF
### ALLOWED GENERAL UNSECURED CLAIMS (CLASS 7)

**10.1    Allowed General Unsecured Claims:** Unless otherwise agreed, the Debtor will pay the Allowed General Unsecured Claims in pro rata monthly installments totaling $30,000 collectively until Allowed General Unsecured Claimants receive 80% of their Allowed General Unsecured Claim commencing by no later than the later of (a) within forty-five (45) days of the Effective Date, or (b) thirty (30) days after a General Unsecured Claim becomes an Allowed General Unsecured Claim.

In the event that Mariner prevails on the Appeal and obtains a higher judgment, then the payout to unsecured creditors will likely be diminished.

**10.2    Status of Class:** Class 7 is impaired. Therefore, a vote for acceptance or rejection of the Plan will be solicited from the Claimants in such Class.

## ARTICLE 11

### PROVISIONS FOR TREATMENT OF
### ALLOWED CLAIMS RELATED TO HIGH ISLAND A-96 (CLASS 8)

**11.1    Allowed Claims Related to High Island A-96:** Unless otherwise agreed, each Allowed Claim Related to High Island A-96 shall be satisfied in full as follows:

The Debtor shall assign twenty percent (20%) of record title of High Island A-96 to Texas Standard Oil & Gas, LP within forty-five (45) days of the Effective Date.

The Debtor shall assign fifteen percent (15%) of record title of High Island A-96 to Grimes Energy Company within forty-five (45) days of the Effective Date.

The Debtor shall assign twenty-five percent (25%) of record title of High Island A-96 to PetroVal, Inc. within forty-five (45) days of the Effective Date.

To the extent the Debtor receives compensation for these assignments, the Debtor anticipates such compensation will be immaterial to the Plan.

**11.2    Status of Class:**  Class 8 is impaired.  Therefore, votes for acceptance or rejection of the Plan for members of such Class will be solicited.

## ARTICLE 12

### PROVISIONS FOR TREATMENT OF OWNERSHIP INTERESTS (CLASS 9)

**12.1    Ownership Interests:**  The current ownership interest holders shall retain their respective ownership interests in the Reorganized Debtor

**12.2    Status of Class:**  Class 9 is unimpaired.  Therefore, votes for acceptance or rejection of the Plan from holder of the membership interests in such Class will not be solicited.

## ARTICLE 13

### IDENTIFICATION OF CLAIMS AND
### INTERESTS NOT IMPAIRED BY THE PLAN

**13.1    Unimpaired Classes:**  Classes 1, 2, 3, 4, 5, 6 and 9 are not impaired under the Plan and, therefore, votes for the Plan by the holders of Claims in such Classes will not be solicited due to the presumed acceptance of the Plan by such holders pursuant to Section 1126(f) of the Bankruptcy Code.

**13.2    Impaired Classes Entitled to Vote on Plan:**  Classes 7 and 8 are impaired and holders of Allowed Claims in such Classes are, therefore, entitled to vote for acceptance or rejection of the Plan, and their votes will be solicited.

## ARTICLE 14

### ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF IMPAIRED CLAIMS

**14.1** **Acceptance of Plan by Class of Creditors:** A Class of Creditors shall have accepted the Plan if the Plan is accepted by holders of Claims of at least two-thirds in amount and more than one-half in number in such Class who vote to accept or reject the Plan.

**14.2** **Cramdown:** In the event that one or more Classes of Creditors rejects the Plan, as long as at least one impaired Class of Creditors votes to accept the Plan (disregarding the votes of insiders), the Debtor shall request the Bankruptcy Court to confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code.

## ARTICLE 15

### MEANS FOR IMPLEMENTATION OF THE PLAN

**15.1** **Ownership Interests in the Reorganized Debtor:** On the Effective Date, Charles Sharman, Chip Langston, LuJan Langston, Idylette Roberson and Timothy Roberson (the "Owners") shall retain ownership interests in the Reorganized Debtor free and clear of all interests, liens, claims and encumbrances as follows: Charles Sharman – 9.39%; Joseph F. Langston, Jr. – 24.30%; LuJan Langston – 16.20%; Idylette Roberson – 0.12% and Timothy Roberson – 49.99%.

**15.2** **Vesting of Assets.** On the Effective Date, the property of the estate of the Debtor, including but not limited to any and all rights, claims, or causes of action, whether known or unknown, asserted or unasserted, at law or equity, and whether arising pursuant to the Bankruptcy Code or other applicable law, shall be conveyed, transferred to, and vested in the Reorganized Debtor. The Reorganized Debtor shall be and hereby is appointed the representative of the estate for the benefit of Creditors of the Debtor for purposes of prosecuting any and all rights, claims, or causes of action so transferred, including, but not limited to, actions arising pursuant to Chapter 5 of the Bankruptcy Code, whether known or unknown, asserted or unasserted, at law or equity, and whether arising pursuant to the Bankruptcy Code or other applicable law. Subject to the foregoing, the Reorganized Debtor may, thereafter and without Court approval, prosecute, defend, settle or dismiss rights, claims, or causes of action as the Reorganized Debtor sees fit and all proceeds therefrom shall be the property of the Reorganized Debtor, except as expressly released within this Plan.

**15.3** **Corporate Authority.** On the Effective Date, Charles Sharman shall continue as President and Sole Director of the Reorganized Debtor. All actions and transactions contemplated under the Plan shall be authorized upon confirmation of the Plan without the need of further board or stockholder resolutions, approval, notice or meetings, other than the notice provided by serving this Plan on all known creditors of the Debtor, all known Equity Interest Holders as of the Voting Deadline, and all current directors of the Debtor. The Confirmation Order shall include provisions dispensing with the need of further board or stockholder resolutions, approval, notice or meetings and authorizing and directing the President and Sole Director of the Debtor to execute such

documents necessary to effectuate the Plan, which documents shall be binding on the Debtor, the Debtor's creditors and all of the Debtor's Interest holders.

**15.4    Control of Books and Records.**  The Reorganized Debtor shall have complete and exclusive access to, possession and control of, on and after the Effective Date, all books, records, and office space of the Debtor.  The Debtor, any management personnel, employees, agents and other professionals shall immediately surrender all such books, records, and office space to the Reorganized Debtor on the Effective Date.

## ARTICLE 16

### PROCEDURES FOR RESOLVING AND TREATING
### CONTESTED DISPUTED CLAIMS  UNDER THE PLAN

**16.1    Objection Deadline.**  As soon as practicable, but in no event later than sixty days after the Effective Date, unless extended by order of the Bankruptcy Court, objections to Claims shall be filed with the Bankruptcy Court and served upon the holders of each of the Claims to which objections are made.

**16.2    Prosecution of Objections**.  On and after the Effective Date, except as the Bankruptcy Court may otherwise order, the filing, litigation, settlement or withdrawal of all objections may be made by the Reorganized Debtor.

**16.3    Distributions.**

> **16.3.1  Payment of Distributions.**  On the Effective Date, the Debtor shall pay in full and in cash all Allowed Claims in Classes 1, 2, 3 and 4.

> **16.3.2  Distributions to Class 5.**  Payments to the holder of the Allowed Secured Claim of Forest Oil Corporation in Class 5 shall be made in accordance with the provisions of Article 8.1 of the Plan.  Within thirty (30) days of the Debtor's election described in Article 8.1, the Debtor shall either surrender collateral securing the Allowed Secured Claim of Forest Oil Corporation to Forest Oil Corporation in full satisfaction of its Allowed Claim, or distribute to Forest Oil Corporation funds sufficient to pay the Allowed Secured Claim of Forest Oil Corporation in full.

> **16.3.3  Distributions to Class 6.**  Payments to the holder of the Allowed Secured Claim of Mariner Resources, Inc./Mariner Energy Resources, Inc. in Class 6 shall be made in accordance with the provisions of Article 9.1 of the Plan.  Within thirty (30) days of the Debtor's election described in Article 9.1, the Debtor shall either surrender collateral securing the Allowed Secured Claim of Mariner Resources, Inc./Mariner Energy Resources, Inc. to Mariner Resources, Inc./Mariner Energy Resources, Inc. in full satisfaction of its Allowed Claim, or distribute to Mariner Resources, Inc./Mariner Energy Resources, Inc. funds sufficient to pay the Allowed Secured Claim of Mariner Resources, Inc./Mariner Energy Resources, Inc. in full.

     **16.3.4** **Distributions to Class 7.** All Distributions under this Plan shall be made to or in the case of Disputed Claims, reserved on behalf of holders of Allowed Claims. On the Effective Date, or as soon thereafter as is reasonably practicable, but in no event more than forty-five (45) days after the Effective Date, the Reorganized Debtor shall begin to make pro rata monthly distributions to Allowed General Unsecured Claimants pursuant to Article 10.1.

     **16.3.5** **Distributions to Class 8.** Within forty-five (45) days of the Effective Date, the Reorganized Debtor shall execute assignments to holders of Allowed claims Related to High Island A-96 as set forth in Article 11.1.

**16.4** **Delivery of Distributions by Debtor.** Subject to Bankruptcy Rule 9010, distributions to holders of Allowed Claims shall be made at the address of each such holder as set forth in the proofs of Claim or proofs of Equity Interest filed by such holders (or at the last known address of such a holder if no proof of Claim or proof of Equity Interest is filed or if the Plan Trustee has been notified in writing of a change of address). If any holder's Distribution is returned as undeliverable, no further distribution to such holder shall be made unless and until the Debtor or Reorganized Debtor is notified of such holder's then current address, at which time all undelivered Distributions shall be made to such holder without interest.

**16.5** **Reserves for Disputed Claims**.

     **16.5.1** **Amount of Reserves.** Except to the extent that the Bankruptcy Court shall determine that a lesser amount is adequate, the Reorganized Debtor shall deposit all funds received subject to distribution in accordance with the Plan by the Reorganized Debtor in an interest bearing (in the case of deposits of Cash) escrow account (the "Disputed Claims Reserve Account") equal to the Distributions that would have been made to the holders of Disputed Claims in such Class or category if such Claims were allowed in the Adjusted Amount.

     **16.5.2** **Held in Trust.** All earnings on funds deposited in the Disputed Claims Reserve Account or proceeds from liquidation of Assets held in the Disputed Claims Reserve Account, shall be held in trust in the Disputed Claims Reserve Account and shall be distributed only in the manner provided in this Plan.

     **16.5.3** **Release of Reserves from Disputed Claims Reserve Account.** At such time as all or any portion of a Disputed Claim becomes an Allowed Claim, the Distributions reserved for such Disputed Claim or portion (including any interest thereon or dividends received with respect thereto) shall be released from the Disputed Claims Reserve Account and paid or distributed by the Reorganized Debtor to the holder of such Allowed Claim, net of any taxes or other applicable charges required to be paid by the Reorganized Debtor in respect thereof. At such time as all or any portion of a Disputed Claim is determined not to be an Allowed Claim, the Distributions reserved for such Disputed Claim or portion (including any interest thereon or dividends

received with respect thereto) shall be in the case of Cash, released from the Disputed Claims Reserve Account and paid to holders of Allowed Claims in Class 7.

**16.6   Unclaimed Distributions.**

**16.6.1   Safeguarding of Unclaimed Distributions.** For a period of six (6) months following the earlier of the Effective Date or date of Distribution, Distributions, including any interest as may have been earned thereon and dividends as may have been received with respect thereto, that have not been claimed shall be held by the Reorganized Debtor in the Disputed Claims Reserve Account, solely for the benefit of the holders of Allowed Claims and Allowed Administrative Claims that have failed to claim such Distributions and shall be released from the Disputed Claims Reserve Account and delivered to such holder, net of any taxes or other applicable charges required to be paid by the Reorganized Debtor in respect thereof, upon presentation of proper proof by such holder of its entitlement thereto.

**16.6.2   Release of Unclaimed Distributions.** On the date on which all or any portion of any Distribution becomes an Unclaimed Distribution (including interest thereon and dividends with respect thereto), such Unclaimed Distribution shall be released by the Reorganized Debtor from the Disputed Claims Reserve Account and paid or reallocated to holders of Allowed Claims in Class 7.

**16.7   Form of Distributions.** Any Cash payment to be made pursuant to the Plan may be made by a check or wire transfer or as otherwise required by an order of the Bankruptcy Court.

**16.8   Rounding.** Whenever a payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction down to the nearest whole cent.

**16.9   Disputed Payment.** In the event that any dispute arises as to the right of a holder of an Allowed Claim to receive any Distribution to be made under this Plan, the Reorganized Debtor may, in lieu of making such Distribution to such holder, make such Distribution into an escrow account or hold such Distribution until the disposition thereof shall be determined by the Bankruptcy Court or by written agreement among the interested parties to such dispute.

**16.10   De Minimus Distributions.** No Distribution of less than five dollars ($5) shall be made to any holder of an Allowed Claim. Such undistributed amount shall be retained the Reorganized Debtor.

**16.11   Means of Cash Payment.** Cash payments made pursuant to the Plan shall be in U.S. funds, by check drawn on a domestic bank, or, at the Reorganized Debtor's option, as appropriate, by wire transfer from a domestic bank, except that payments made to foreign creditors holding Allowed Claims may be in such funds and by such means as are customary or as may be necessary in a particular foreign jurisdiction.

**16.12   Time Bar to Cash Payments.** Checks issued by the Reorganized Debtor in respect of Allowed Claims shall be null and void if not negotiated within six months after the date of issuance thereof. Requests for reissuance of any check shall be made directly to the Reorganized Debtor by the holder of the Allowed Claim with respect to which such check originally was issued. Any claim in respect of such a voided check shall be made on or before 90 days after the date of issuance of such check. After such date, all Claims in respect of void checks shall be discharged and forever barred.

**16.13   No Distributions Pending Allowance.** Notwithstanding any other provision of the Plan, no payment or distribution shall be made with respect to any Claim to the extent it is a Contested Claim, unless and until such Contested Claim becomes an Allowed Claim.

**16.14   Distributions After Allowance.** Payments and distributions to each holder of a Disputed Claim, to the extent that such Claim ultimately becomes an Allowed Claim, shall be made in accordance with the provisions of the Plan governing the class of Claims to which the respective holder belongs. With respect to any Claim that is a Contested Claim on the Effective Date, as soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing such Contested Claim becomes a Final Order or a Disputed Claim otherwise becomes an Allowed Claim the Reorganized Debtor shall distribute to the holders of such Claim any Cash payment, without interest, that would have been distributed to such holder if the Claim had been Allowed on the Effective Date.

**16.15   Prosecution of Objections.** On and after the Effective Date, except as the Bankruptcy Court may otherwise order, the filing, litigation, settlement or withdrawal of all objections may be made by the Reorganized Debtor.

### ARTICLE 17

### EXECUTORY CONTRACTS AND
### UNEXPIRED LEASES UNDER THE PLAN

**17.1   Rejection of Executory Contracts and Unexpired Leases:** All contracts and leases constituting executory contracts or unexpired leases under the provisions of Section 365 of the Bankruptcy Code which have not already been assumed or rejected, not made the subject of a pending motion to assume or reject, and/or not assumed as part of the Plan shall be deemed to have been rejected by the Debtor as of the Confirmation Date in accordance with Section 365 of the Bankruptcy Code.

**17.2   Assumed Executory Contracts:** The Reorganized Debtor assumed the following executory contracts as of the Effective Date:

> **17.2.1** Joint Operating Agreement dated effective October 1, 2004, between Apache Corporation, as Operator, and Sandalwood Exploration, L.P. et al., as Non-Operators, covering Main Pass Area Block 7, Offshore Louisiana.

**17.2.2** Joint Operating Agreement dated December 15, 2004 between Sandalwood Oil & Gas, L.P., as Operator, and Island Drilling, LLC et al., as Non-Operators, covering the Calcasieu Lake South Prospect, Cameron Parish, Louisiana.

**17.2.3** Farmout Agreement dated February 25, 2004, between Forest Oil Corporation, Texas Standard Oil Company, Nobel Energy, Inc. and Pioneer Natural Resources USA, Inc. regarding West Delta 34, Offshore Louisiana.

**17.2.4** Joint Operating Agreement dated January 3, 1977, between Transco Exploration Company as Operator, and Freeport Oil Company et al., as Non-Operators, covering the North Half (n/2) of West Delta Area Block 34, Offshore, Louisiana.

**17.2.5** Nominee Agreement Regarding Brazos Block 488 between Debtor and Buccaneer Resources, LLC and Highbaugh Field Corporation.

**17.2.6** Nominee Agreement Regarding High Island A-96 between Debtor and Texas Standard Oil & Gas, LP.

**17.3** <u>**Filing of Claims for Rejection Damages:**</u>  All Claims arising from the rejection of executory contracts and unexpired leases under Section 365 of the Bankruptcy Code must be evidenced by properly filed proofs of claims. Such proofs of claims must be filed with the Clerk's Office of the Bankruptcy Court within any applicable deadlines previously established by the Bankruptcy Court or, if no previously established deadline is applicable, within thirty (30) days from the entry of the order confirming the Plan. Such proofs of claims must also be served on counsel for the Debtor. Failure to file a proof of claim on or before the deadline established in this Article shall result in disallowance in full of the Claim. Allowed Unsecured Claims resulting from the rejection of executory contracts shall be treated as Class 7 Claims hereunder as appropriate.

## ARTICLE 18

## MISCELLANEOUS PROVISIONS

**18.1** **Injunctions.** Except as provided in the Plan or Confirmation Order, on and as of the Effective Date all entities that currently hold or may come to hold a Claim or other debt or liability that is Discharged are permanently enjoined from taking any of the following actions on account of any such Discharged Claims, debts or liabilities: (a) asserting commencing or continuing in any manner any action or other proceeding against Reorganized Debtor or its property; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against Reorganized Debtor or its property except as to the Mariner Lawsuit or Appeal; (c) creating, perfecting or enforcing any lien or encumbrance against Reorganized Debtor or its property; (d) asserting a setoff, right of subrogation or recoupment right of any kind against any debt, liability or obligation due to Reorganized Debtor or in connection with its property; and (e) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

**18.2**   **Discharge.**  Except as otherwise provided in this Plan or in the Confirmation Order, entry of the Confirmation Order acts as a Discharge effective as of the Effective Date of any and all Claims against and Equity Interests in the Debtor or any of its Assets or properties. In addition, pursuant to the Confirmation Order the substantial consummation of the Plan on the Effective Date acts as a Discharge effective as of the Effective Date of all Claims and Equity Interests of any holder of a Claim against or Equity Interest in the Debtor that is classified under this Plan and any direct or indirect right or Claim such Person had or may have had against the Debtor. The discharge of the Debtor shall be effective as to each Claim or Interest except as otherwise expressly provided for in the Confirmation Order, regardless of whether a proof of Claim or Equity Interest therefore was filed, whether the Claim or Equity Interest is a Disputed Claim or Equity Interest or an Allowed Claim, Allowed Interest or Allowed Administrative Claim, or whether the holder thereof votes to accept or reject the Plan.

**18.3**   **Conditions to Confirmation**.  The Plan may only be confirmed if Debtor receives payment in full from MOSH Holding LP.

**18.4**   **Governing Law.**  Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, the rights, obligations and provisions of this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas without giving effect to the conflicts of laws principles thereof.

**18.5**   **Modification of Plan.**  This Plan may be altered, amended or modified by the Debtor in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law.

**18.6**   **Severability.**  Should the Bankruptcy Court determine that any provision in this Plan be determined to be unenforceable, either on its face or as applied to any Claim or Equity Interest or transaction, the Debtor may modify this Plan in accordance with Article 18.5 of the Plan so that such provision shall not be applicable to the holder of any Claim or Equity Interest. Such determination shall in no way limit or affect the enforceability and operative effect of any other provision within this Plan.

**18.7**   **U.S. Trustee Quarterly Fees.**  The Reorganized Debtor shall be responsible for timely payment of United States Trustee quarterly fees incurred pursuant to 28 U.S.C. § 1930(a)(6). Any fees due as of the date of confirmation of the plan will be paid in full on or before the Effective Date of the plan. After confirmation, the Reorganized Debtor shall pay United States Trustee quarterly fees as they accrue until its case is closed by the Court. The Reorganized Debtor shall file with the Court and serve on the United States Trustee a financial report for each quarter, or portion thereof, that its chapter 11 case remains open in a format prescribed by the United States Trustee.

The Reorganized Debtor shall be responsible post-confirmation for the payment of quarterly fees and reporting of monthly financial information.

**18.8**   **Headings:**  The headings used in this Plan are inserted for convenience only and neither constitute a portion of this Plan nor in any manner affect the provisions or interpretations of this Plan.

**18.9** **Successors and Assigns; Transferability:** The rights and obligations of any Person named or referred to in this Plan shall inure to the benefit of, and shall be binding upon, as the case may be, the successors and assigns of such Person.

**18.10** **Revocation:** The Debtor reserves the right to revoke and withdraw this Plan prior to the Effective Date. If the Debtor revoke or withdraws this Plan or if the Effective Date does not occur, then this Plan shall be deemed null and void and in such event nothing herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any Persons in any further proceeding involving the Debtor.

**18.11** **Compliance with Tax Requirements:** In connection with the Plan, the Reorganized Debtor shall comply with all withholding and reporting requirements imposed by federal, state, local and foreign taxing authorities and all distributions hereunder shall be subject to such withholding and reporting requirements.

**18.12** **Compliance with Applicable Laws:** If notified by any governmental authority that it is in violation of any applicable law, rule, regulation or order of such governmental authority relating to its business, Reorganized Debtor shall comply with such law, rule, regulation or order; provided, however, that nothing contained herein shall require such compliance by Reorganized Debtor where the legality or applicability of such law, rule, regulation or order is being contested in good faith in appropriate proceedings by Reorganized Debtor and, if appropriate, for which an adequate reserve has been set aside on the books of Reorganized Debtor. Reorganized Debtor shall be responsible for all such compliance.

**18.13** **Business Days:** In the event that any payment or distribution to be made hereunder would otherwise be required to be made on a day that is not a Business Day, such payment or distribution shall instead be made on the next succeeding Business Day.

**18.14** **Conflict:** In the event that there is any conflict or inconsistency between this Plan and the Disclosure Statement, the terms and provisions of this Plan shall govern.

**18.15** **Notices:** Except as otherwise specified in the Plan, all notices and requests hereunder shall be given by any written means, including, but not limited to, telex, telecopy, telegram, first class mail, express mail or similar overnight delivery service and hand-delivered letter; and any such notice or request shall be deemed to have been given when received. Notices shall be given as follows:

**TO DEBTOR, IN CARE OF:**

>   Venice Production Company f/k/a Texas Standard Oil Company
>   9 Greenway Plaza, Suite 3040
>   Houston, Texas 77046-0919

>   With copy to:

HughesWattersAskanase, LLP
<u>Attention</u>: David J. Askanase, Esq.
333 Clay Street, 29th Floor
Houston, Texas 77002

**18.16   Computation of Time:** In computing any time prescribed by this Plan, the day of the act, event or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a "legal holiday" as defined in Bankruptcy Rule 9006(a), in which event the period runs until the end of the next day which is not one of the aforementioned days.

**ARTICLE 19**

**PROVISIONS FOR RETENTION OF JURISDICTION BY THE
BANKRUPTCY COURT FOR SUPERVISION OF CONSUMMATION**

The Bankruptcy Court shall retain jurisdiction over all matters arising under, or arising in, or relating to the Chapter 11 Case or this Plan to the fullest extent permitted by 28 U.S.C. § 1334 to hear, and by 28 U.S.C. § 157 to determine, all proceedings in respect thereof, including, but not limited to, proceedings for supervision of the Plan. Specifically, but without limitation, and if applicable law provides, the Bankruptcy Court shall have jurisdiction:

    (a)    to hear and determine any and all objections or other matters relating to the allowance of Claims including, without limitation, Administrative Claims;

    (b)    to hear and determine any and all applications for allowance and payment of fees and expenses made by attorneys and other professionals pursuant to Sections 330 or 503 of the Bankruptcy Code, or for payment of any other fees or expenses authorized to be paid or reimbursed by the Debtor pursuant to provisions within the Bankruptcy Code, and any objections thereto;

    (c)    to hear and determine any and all pending applications for rejection, assumption or assumption and assignment, as the case may be, of unexpired leases and executory contracts to which the Debtor is a party or with respect to which it may be liable, any and all Claims arising therefrom; and any other issue that may arise under Section 365 of the Bankruptcy Code;

    (d)    to hear and determine any and all motions, applications, adversary proceedings and contested or litigated matters regarding Claims or interest, accrued prior to the Confirmation Date, as to assets revested pursuant to Section 1141 of the Bankruptcy Code;

    (e)    to consider and approve modifications of or amendments to the Plan;

(f)     to hear and determine disputes regarding the implementation or consummation of the Plan;

(g)     to hear and determine all controversies, disputes, settlements, and suits which may arise in connection with the interpretation or enforcement of this Plan, or in connection with the enforcement of remedies under this Plan;

(h)     to hear and determine all controversies, disputes and issues relating to the Discharge of the Debtor during the period in which the Chapter 11 Case remains open;

(i)     to consider and approve compromises, settlements and adjudications of any objections to Claims;

(j)     to estimate disputed, contingent and unliquidated Claims for purposes of distribution under the Plan;

(k)     to correct any defect, cure any omission or reconcile any inconsistency in the Plan;

(l)     to resolve any issues or disputes relating to the revesting of title, sale, or liquidation of Assets in accordance with provisions within the Plan;

(m)     to enter a final decree closing the Chapter 11 Case;

(n)     to hear and determine matters concerning state, local and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code;

(o)     to hear and determine any matters arising in connection with or related to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, conveyance, release or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order, including the Plan Documents;

(p)     to hear and determine any and all adversary proceedings, motions, applications and contested or litigated matters, including, but not limited to, all claims and causes of action pursuant to 11 U.S.C. §§ 510, 542, 543, 544, 545, 546, 547, 548, 549, 550 and 551, as well as any claim, cause of action or right described elsewhere in the Plan or in the Disclosure Statement;

(q)     to hear and determine all Causes of Action filed after the Effective Date by the Reorganized Debtor;

(r)     to enforce all orders, judgments, injunctions, releases, exceptions, indemnifications and rulings entered in connection with this Chapter 11 case;

(s)    to hear and determine all matters related to the property of Debtor's Chapter 11 estate or the property and rights of the Reorganized Debtor from and after the Effective Date;

(t)    to hear and determine any other matter not inconsistent with the Bankruptcy Code and title 28 of the United States Code that may arise in connection with or related to this Plan; and

(u)    to hear and determine such other matters as may arise in connection with the Plan or the Confirmation Order.

## NOTICE

**IF THIS PLAN IS CONFIRMED, ALL CREDITORS AND PARTIES-IN-INTEREST ("YOU") SHALL BE BOUND BY ITS TERMS; THEREFORE, YOU ARE URGED TO REVIEW THIS MATERIAL AND TO MAKE SUCH FURTHER INQUIRIES AS YOU MAY DEEM APPROPRIATE. YOU ARE SOLELY RESPONSIBLE FOR DETERMINING HOW THIS PLAN AFFECTS YOU.**

Dated:   January 19, 2009.

**TEXAS STANDARD OIL COMPANY**

*Charley Sharman*   signed by permission
                                    HHM
Charles Shakman
Its:  President and Sole Director

APPROVED:
**HUGHESWATTERSASKANASE, LLP**

Wayne Kitchens        TBN 11541110
David Askanase        TBN 01390000
Heather Heath McIntyre TBN 24041076
333 Clay, 29th Floor
Houston, Texas 77002
Telephone: (713) 759-0818
Fax: (713) 759-6834
**ATTORNEYS FOR TEXAS STANDARD OIL COMPANY**

/

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **TEXAS STANDARD OIL COMPANY,** | § | **CASE NO. 08-34031** |
| | § | **CHAPTER 11** |
| Debtor. | § | |

### ORDER (i) APPROVING DISCLOSURE STATEMENT; (ii) APPROVING SOLICITATION PACKAGE; (iii) APPROVING PROCEDURES FOR DISTRIBUTION OF SOLICITATION PACKAGE; (iv) APPROVING FORM OF BALLOT; (v) ESTABLISHING LAST DATE FOR RECEIPT OF BALLOT; (vi) APPROVING PROCEDURES FOR VOTE TABULATION; (vii) ESTABLISHING PROCEDURES AND DEADLIEN TO FILE OBJECTIONS TO CONFIRMATION OF PLAN; AND (viii) APROVING FORM AND MANNER OF NOTICE OF CONFIRMATION HEARING OF RELATED ISSUES

Upon consideration of the *Debtor's Motion for Order (i) Approving First Disclosure Statement; (ii) Approving Solicitation Package; (iii) Approving Procedures for Distribution of Solicitation Package; (iv) Approving Form of Ballot; (v) Establishing Last Date for Receipt of Ballot; (vi) Approving Procedures for Vote Tabulation; (vii) Establishing Procedures and Deadline to File Objections to Confirmation of Plan; and (viii) Approving Form and Manner of Notice of Confirmation Hearing of Related Issues* (the "Motion"), filed by Texas Standard Oil Company ("Debtor"), due and adequate notice having been given under the circumstances, and it appearing that the relief requested is in the best interest of the Debtor's estate, the creditors, and other parties in interest, and good cause having been shown for the relief requested, it is hereby

ORDERED that the Motion is **GRANTED**. It is further

ORDERED that the Disclosure Statement Under 11 U.S.C. § 1125 ("Disclosure Statement") in support of the Plan of Reorganization filed by the Debtor ("Plan") provides adequate information and is hereby approved pursuant to 11 U.S.C. § 1125(b) of the Bankruptcy Code. It is further

EXHIBIT

*B*

ORDERED that the Debtor shall transmit by mail and/or ECF to all creditors entitled to vote on the Debtor's Plan a solicitation package ("Solicitation Package") comprised of the following items contained on a CD-Rom and/or in paper format to be determined by the Debtor:

(a)     a written notice in substantially the form attached as Exhibit "A" to the Motion of (i) the Motion, (ii) the commencement date of the hearing considering confirmation of the Plan ("Confirmation Hearing"), (iii) the deadline and procedures for filing objections to confirmation of the Plan and related issues, and (iv) notice of the time within which acceptances and rejections of the Plan may be filed;

(b)     the Plan and the Disclosure Statement;

(c)     a form of ballot in substantially the form attached as Exhibit "B" to the Motion; and

(d)     such other information as the Court may require.

It is further

ORDERED that counsel to the Debtor shall be the solicitation and balloting agent ("Solicitation Agent") to inspect, monitor, and supervise the solicitation process and to transmit the Solicitation Packages to creditors who are entitled to receive the Solicitation Package and to vote on the Plan, to serve as the tabulator of the ballots, and to certify to the Court the results of the balloting. It is further

ORDERED that all ballots accepting or rejecting the Plan must be received by the Solicitation Agent no later than 5:00 p.m. Central Time, on _____("Ballot Return Date"). It is further

ORDERED that the amount of a claim used to tabulate acceptance or rejection of the Plan shall be either: (a) the claim amount listed in the Debtor's schedules of liabilities, provided that (i) such claim is not scheduled as contingent, unliquidated, or disputed, and (ii) no proof of claim has been timely filed (or otherwise deemed timely filed by the Court under applicable

law); (b) the liquidated amount specified in a proof of claim and is not the subject of an objection (or if such claim has been resolved pursuant to a stipulation or order entered by the Court, the amount set forth in such stipulation or order); or (c) the amount temporarily allowed by the Court for voting purposes pursuant to Bankruptcy Rule 3018(a) after a motion is brought, notice is provided, and a hearing is held prior to the Voting Deadline.  It is further

ORDERED that if a creditor casts a ballot, the creditor has timely filed a proof of claim (or has otherwise had such proof of claim deemed timely filed by the Court under applicable law), and the creditor's claim is the subject of an objection to claim filed before the Confirmation Hearing, the creditor's ballot shall not be counted, unless temporarily allowed by the Court for voting purposes pursuant to Bankruptcy Rule 3018(a), after a motion is brought, notice is provided, and a hearing is held prior to the Confirmation Hearing.  It is further

ORDERED that the ballots cast by creditors whose claims (a) are not listed on the Debtor's schedule of liabilities or (b) are listed as disputed on the Debtor's schedules of liabilities, but who have timely filed proofs of claim in unliquidated or unknown amounts that are not the subject of an objection before the commencement of the Confirmation Hearing, shall have their ballots counted towards satisfying the numerosity requirement of § 1126(c) of the Bankruptcy Code, and shall have their ballots counted as $1.00 towards satisfying the aggregate claim amount requirements of that section.  It is further

ORDERED that the following voting procedures and standard assumptions shall be used in tabulating ballots:

    a.    For purposes of the numerosity requirements of § 1126(c) of the Bankruptcy Code, separate claims held by a single creditor in a particular class shall be aggregated as if such creditor held one claim against the Debtor in such class, and the votes related to such claims will be treated as a single vote to accept or reject the Plan.

b.    Creditors shall vote all of their claims within a particular class either to accept or reject the Plan and may not split their vote. Accordingly, a ballot (or multiple ballots with respect to multiple claims within a single class) that partially rejects and partially accepts the Plan will be counted as a single affirmative vote to accept the Plan.

c.    Ballots that fail to indicate an acceptance or rejection of the Plan, but are otherwise properly executed and received prior to the Ballot Return Date, will be counted as a vote accepting the Plan.

d.    Only ballots that are timely received with original signatures will be counted. Unsigned ballots will not be counted. Facsimile ballots will not be counted unless the claimant receives the written consent of the Debtor.

e.    Any ballot that is illegible or contains insufficient information to permit the identification of the claimant will not be counted.

f.    Any ballot cast by a person or entity that does not hold a claim in a class that is entitled to vote to accept or reject a Plan will not be counted.

It is further

ORDERED that any objection, comment, or response to the confirmation of the Plan (including any supporting memoranda) must (a) be in writing; (b) state the grounds for the objection, if any, and the legal and factual bases thereof; (c) reference with specificity the text of the Plan to which the objection, if any, is addressed; (d) comply with the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules; and (e) be served on the parties below, and be filed with the Court, together with proof of service, such that they are received by such parties and the Court on or before 4:30 p.m. Central Time, on _____, 20___.

Objections to confirmation of the Plan should be served on the following parties:

*To the Debtor*

Heather McIntyre
HUGHESWATTERSASKANASE, LLP
333 Clay Street, 29th Floor
Houston, Texas 77002
Fax:   713-759-6834

*To the United States Trustee:*

Office of the United States Trustee
515 Rusk Avenue, Suite 3516
Houston, Texas 77002
Telephone:  713-718-4670

It is further

ORDERED that all objections not timely filed and served in accordance with the provisions of this Motion shall be deemed waived.  It is further

ORDERED that notice of (a) the Court's approval of the Disclosure Statement, (b) the commencement date of the Confirmation Hearing, (c) the deadline and procedures for filing objections to confirmation of the Plan, and (d) claims voting procedures shall be included as part of the Solicitation Package in substantially the form of the Notice annexed as Exhibit "A" to the Motion and shall be sent on a CD-Rom and/or paper via regular mail to all creditors, parties in interest, and equity holders that are entitled to vote consistent with the relief requested in this Motion.  It is further

ORDERED that the Confirmation Hearing shall be on _____, 20___.

SIGNED this _____ day of _____ 20___.


_____
UNITED STATES BANKRUPTCY JUDGE

1331576-1:TSOC:0001

APPROVED & SUBMITTED BY:

*/s/ Heather McIntyre*

Wayne Kitchens      TBN 11541110
David Askanase      TBN 01390000
Heather McIntyre    TBN 24041076
HUGHESWATTERSASKANASE, LLP
333 Clay Street, 29th Floor
Houston, Texas 77002
Tel: 713.759.0818
Fax: 713.759.6834
COUNSEL FOR TEXAS STANDARD
OIL COMPANY

EXHIBIT "C"

## Texas Standard Oil Company
### Liquidation Analysis as of January 2009

| Asset | Estimated Value | Notes |
|---|---|---|
| Apache Well (Main Pass 7-2) | $110,819 | 25% of projected cash flow given uncertainties in current economy, and small non-operated offshore interest |
| Davis Trust Well | $49,064 | 25% of projected cash flow given uncertainties in current economy, and small non-operated interest |
| Brazos Block 488 ORRI | $500 | .00333 Overriding royalty on undrilled block. Would require $150,000 of gross production to recoup even $500. |
| West Delta 34 | $0 | Leasehold interest found to be forfeited; appeal pending |
| HI 552 | $0 | Lease has expired; no remaining assets. |
| Note Receivable | $556,000 | Face value of principal plus interest |
| HI A-96 legal title | $0 | Bare legal title to a partial interest (60%) |
| Forest/Mariner Appeal | $0 | No established market for causes of action, lost in district court, now pending appeal. |
| Office lease security deposit | $4,479 | Face value |
| **TOTAL** | **$720,862** | |

EXHIBIT "D"

## Texas Standard Oil Company
### Summary
### Revenue & Cost Projection

| Projected | Jan 09 | Feb 09 | Mar 09 | Apr 09 | May 09 | Jun 09 | Jul 09 | Aug 09 | Sep 09 | Oct 09 |
|---|---|---|---|---|---|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | | | | | | | |
| **Income** | | | | | | | | | | |
| Davis Trust | 8,600.00 | 8,600.00 | 8,600.00 | 8,600.00 | 8,600.00 | 8,600.00 | 8,600.00 | 8,600.00 | 8,600.00 | 8,600.00 |
| MP #7-2 | 30,732.85 | 38,352.77 | 47,332.52 | 48,910.51 | 62,765.12 | 68,696.33 | 37,139.56 | 27,217.67 | 23,008.75 | 14,441.12 |
| **Total Income** | 39,332.85 | 46,952.77 | 55,932.52 | 57,510.51 | 71,365.12 | 77,296.33 | 45,739.56 | 35,817.67 | 31,608.75 | 23,041.12 |
| **Cost of Goods Sold** | | | | | | | | | | |
| IDC Expense (Recomplete MP 7-2) | 10,000.00 | - | - | - | - | - | - | - | - | - |
| **Lease Operating Expense** | | | | | | | | | | |
| Davis Trust | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 |
| MP #7-2 | 415.60 | 658.06 | - | 962.34 | 934.69 | - | 1,138.07 | 297.10 | 424.39 | 298.93 |
| Total LOE | 915.60 | 1,158.06 | 500.00 | 1,462.34 | 1,434.69 | 500.00 | 1,638.07 | 797.10 | 924.39 | 798.93 |
| **Severance Taxes** | | | | | | | | | | |
| Davis Trust | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 |
| MP #7-2 | | | | | | | | | | |
| Total Severance Taxes | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 |
| **Total COGS** | 11,215.60 | 1,458.06 | 800.00 | 1,762.34 | 1,734.69 | 800.00 | 1,938.07 | 1,097.10 | 1,224.39 | 1,098.93 |
| **Gross Profit** | 28,117.25 | 45,494.71 | 55,132.52 | 55,748.17 | 69,630.43 | 76,496.33 | 43,801.49 | 34,720.57 | 30,384.36 | 21,942.19 |
| **Expense** | | | | | | | | | | |
| Misc G&A | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 |
| Interest Expense - Loans | | | | | | | | | | |
| **Professional Fees** | | | | | | | | | | |
| Accounting Fees | 1,500.00 | | 4,500.00 | 1,500.00 | | | | | | |
| Legal Fees | 10,000.00 | | | | | | | | | |
| Total Professional Fees | 11,500.00 | | 4,500.00 | 1,500.00 | | | | | | |
| Quarterly Fee - Bankruptcy | 900.00 | | | 900.00 | | | | | | |
| Rent & Parking | 7,300.00 | 7,300.00 | 7,300.00 | 7,300.00 | 7,300.00 | 7,300.00 | 7,300.00 | 7,500.00 | 7,500.00 | 7,500.00 |
| Staff Leasing | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 |
| Telephone & Internet | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 |
| **Total Expense** | 22,700.00 | 10,300.00 | 14,800.00 | 12,700.00 | 10,300.00 | 10,300.00 | 10,300.00 | 10,500.00 | 10,500.00 | 10,500.00 |
| **Net Ordinary Income** | 5,417.25 | 35,194.71 | 40,332.52 | 43,048.17 | 59,330.43 | 66,196.33 | 33,501.49 | 24,220.57 | 19,884.36 | 11,442.19 |
| **Other Income/Expense** | | | | | | | | | | |
| **Other Income** | | | | | | | | | | |
| MOSH Note & Interest Repmt | 555,900.00 | | | | | | | | | |
| Overhead Reimbursement | 1,560.00 | 1,560.00 | 1,560.00 | 1,560.00 | 1,560.00 | 1,560.00 | 1,560.00 | 1,560.00 | 1,560.00 | 1,560.00 |
| **Total Other Income** | 557,460.00 | 1,560.00 | 1,560.00 | 1,560.00 | 1,560.00 | 1,560.00 | 1,560.00 | 1,560.00 | 1,560.00 | 1,560.00 |
| **Total Other Expense** | | | | | | | | | | |
| **Net Other Income** | 557,460.00 | 1,560.00 | 1,560.00 | 1,560.00 | 1,560.00 | 1,560.00 | 1,560.00 | 1,560.00 | 1,560.00 | 1,560.00 |
| **Net Income** | 562,877.25 | 36,754.71 | 41,892.52 | 44,608.17 | 60,890.43 | 67,756.33 | 35,061.49 | 25,780.57 | 21,444.36 | 13,002.19 |

EXHIBIT "D"

## Texas Standard Oil Company
### Summary
### Revenue & Cost Projection

| Projected | Nov 09 | Dec 09 | Jan 10 | Feb 10 | Mar 10 | Apr 10 | May 10 | Jun 10 | Jul 10 | Aug 10 | Sep 10 | Oct 10 | Nov 10 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | | | | | | | | | | |
| **Income** | | | | | | | | | | | | | |
| Davis Trust | 8,600.00 | 8,600.00 | 8,600.00 | 8,600.00 | 8,600.00 | 8,600.00 | 8,600.00 | 8,600.00 | 8,600.00 | 8,600.00 | 6,500.00 | 4,400.00 | 2,200.00 |
| MP #7-2 | 11,821.29 | 9,910.51 | 8,159.45 | 5,776.26 | 4,699.56 | 4,832.67 | 4,587.46 | 2,175.55 | 3,314.37 | 2,947.85 | 1,779.75 | 1,425.11 | 1,443.33 |
| **Total Income** | 20,421.29 | 18,510.51 | 16,759.45 | 14,376.26 | 13,299.56 | 13,432.67 | 13,187.46 | 10,775.55 | 11,914.37 | 11,547.85 | 8,279.75 | 5,825.11 | 3,643.33 |
| **Cost of Goods Sold** | | | | | | | | | | | | | |
| IDC Expense (Recomplete MP 7-2) | | | | | | | | | | | | | |
| **Lease Operating Expense** | | | | | | | | | | | | | |
| Davis Trust | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 |
| MP #7-2 | 429.70 | 668.57 | 637.15 | 904.09 | 606.52 | (4,022.60) | 569.60 | 739.71 | - | 1,318.83 | 500.98 | 589.89 | 550.64 |
| **Total LOE** | 929.70 | 1,168.57 | 1,137.15 | 1,404.09 | 1,106.52 | (3,522.60) | 1,069.60 | 1,239.71 | 500.00 | 1,818.83 | 1,000.98 | 1,089.89 | 1,050.64 |
| **Severance Taxes** | | | | | | | | | | | | | |
| Davis Trust | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 |
| MP #7-2 | | | | | | | | | | | | | |
| **Total Severance Taxes** | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 |
| **Total COGS** | 1,229.70 | 1,468.57 | 1,437.15 | 1,704.09 | 1,406.52 | (3,222.60) | 1,369.60 | 1,539.71 | 800.00 | 2,118.83 | 1,300.98 | 1,389.89 | 1,350.64 |
| **Gross Profit** | 19,191.59 | 17,041.94 | 15,322.30 | 12,672.17 | 11,893.04 | 16,655.27 | 11,817.86 | 9,235.84 | 11,114.37 | 9,429.02 | 6,978.77 | 4,435.22 | 2,282.69 |
| **Expense** | | | | | | | | | | | | | |
| Misc G&A | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 |
| Interest Expense - Loans | | | | | | | | | | | | | |
| **Professional Fees** | | | | | | | | | | | | | |
| Accounting Fees | | | 1,500.00 | | 4,500.00 | 1,500.00 | | | | | | | |
| Legal Fees | | | | | | | | | | | | | |
| **Total Professional Fees** | | | 1,500.00 | | 4,500.00 | 1,500.00 | | | | | | | |
| Quarterly Fee - Bankruptcy | | | | | | | | | | | | | |
| Rent & Parking | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,700.00 | 7,700.00 | 7,700.00 | 7,700.00 |
| Staff Leasing | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 |
| Telephone & Internet | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 |
| **Total Expense** | 10,500.00 | 10,500.00 | 12,000.00 | 10,500.00 | 15,000.00 | 12,000.00 | 10,500.00 | 10,500.00 | 10,500.00 | 10,700.00 | 10,700.00 | 10,700.00 | 10,700.00 |
| **Net Ordinary Income** | 8,691.59 | 6,541.94 | 3,322.30 | 2,172.17 | (3,106.96) | 4,655.27 | 1,317.86 | (1,264.16) | 614.37 | (1,270.98) | (3,721.23) | (6,264.78) | (8,407.31) |
| **Other Income/Expense** | | | | | | | | | | | | | |
| **Other Income** | | | | | | | | | | | | | |
| MOSH Note & Interest Repmt | 1,560.00 | 1,560.00 | 1,560.00 | 1,560.00 | 1,560.00 | 1,560.00 | 1,560.00 | 1,560.00 | 1,560.00 | 1,560.00 | 1,560.00 | 1,560.00 | 1,560.00 |
| Overhead Reimbursement | | | | | | | | | | | | | |
| **Total Other Income** | 1,560.00 | 1,560.00 | 1,560.00 | 1,560.00 | 1,560.00 | 1,560.00 | 1,560.00 | 1,560.00 | 1,560.00 | 1,560.00 | 1,560.00 | 1,560.00 | 1,560.00 |
| **Total Other Expense** | | | | | | | | | | | | | |
| **Net Other Income** | 1,560.00 | 1,560.00 | 1,560.00 | 1,560.00 | 1,560.00 | 1,560.00 | 1,560.00 | 1,560.00 | 1,560.00 | 1,560.00 | 1,560.00 | 1,560.00 | 1,560.00 |
| **Net Income** | 10,251.59 | 8,101.94 | 4,882.30 | 3,732.17 | (1,546.96) | 6,215.27 | 2,877.86 | 285.84 | 2,174.37 | 289.02 | (2,161.23) | (4,704.78) | (6,847.31) |

# EXHIBIT "D"

## Texas Standard Oil Company
### Summary
### Revenue & Cost Projection

| Projected | Dec 10 | TOTAL |
|---|---|---|
| Ordinary Income/Expense | | |
| Income | | |
| Davis Trust | - | 219,500.00 |
| MP #7-2 | 1,001.41 | 462,471.77 |
| **Total Income** | 1,001.41 | 681,971.77 |
| | | |
| Cost of Goods Sold | | |
| IDC Expense (Recomplete MP 7-2) | - | 10,000.00 |
| Lease Operating Expense | | |
| Davis Trust | 500.00 | 14,845.10 |
| MP #7-2 | 572.22 | 9,194.48 |
| **Total LOE** | 1,072.22 | 24,039.58 |
| Severance Taxes | | |
| Davis Trust | 300.00 | 8,400.00 |
| MP #7-2 | - | - |
| **Total Severance Taxes** | 300.00 | 8,400.00 |
| **Total COGS** | 1,372.22 | 42,439.58 |
| | | |
| **Gross Profit** | (370.81) | 639,532.19 |
| | | |
| Expense | | |
| Misc G&A | 500.00 | 12,000.00 |
| Interest Expense - Loans | | - |
| Professional Fees | | |
| Accounting Fees | | 15,000.00 |
| Legal Fees | | 10,000.00 |
| Total Professional Fees | - | 25,000.00 |
| Quarterly Fee - Bankruptcy | | 1,800.00 |
| Rent & Parking | 7,700.00 | 179,600.00 |
| Staff Leasing | 2,000.00 | 48,000.00 |
| Telephone & Internet | 500.00 | 12,000.00 |
| **Total Expense** | 10,700.00 | 278,400.00 |
| | | |
| **Net Ordinary Income** | (11,070.81) | 361,132.19 |
| | | |
| Other Income/Expense | | |
| Other Income | | - |
| MOSH Note & Interest Repmt | | 555,900.00 |
| Overhead Reimbursement | 1,560.00 | 37,440.00 |
| **Total Other Income** | 1,560.00 | 593,340.00 |
| | | |
| Total Other Expense | | - |
| | | |
| **Net Other Income** | 1,560.00 | 593,340.00 |
| | | |
| **Net Income** | (9,510.81) | 954,472.19 |

Page 3 of 3

# Exhibit "E"

## Davis Trust Well
### Profit & Loss by Class

| Projected | Sep 08 | Oct 08 | Nov 08 | Dec 08 | Jan 09 | Feb 09 | Mar 09 | Apr 09 |
|---|---|---|---|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | | | | | |
| **Income** | | | | | | | | |
| Gas Sales | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 |
| Oil Sales | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 |
| **Total Income** | 8,600 | 8,600 | 8,600 | 8,600 | 8,600 | 8,600 | 8,600 | 8,600 |
| | | | | | | | | |
| **Cost of Goods Sold** | | | | | | | | |
| Lease Operating Expense | 927.52 | 917.58 | 500 | 500 | 500 | 500 | 500 | 500 |
| Provision for Depletion | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Severance Taxes** | | | | | | | | |
| Severance Tax - Gas | 0.00 | 0.00 | 230 | 230 | 230 | 230 | 230 | 230 |
| Severance Tax - Oil | 0.00 | 0.00 | 70 | 70 | 70 | 70 | 70 | 70 |
| **Total Severance Taxes** | 0.00 | 0.00 | 300 | 300 | 300 | 300 | 300 | 300 |
| | | | | | | | | |
| **Total COGS** | 927.52 | 917.58 | 800 | 800 | 800 | 800 | 800 | 800 |
| | | | | | | | | |
| **Gross Profit** | 7,672.48 | 7,682 | 7,800 | 7,800 | 7,800 | 7,800 | 7,800 | 7,800 |

1333515-1

TSOC-0001

# Exhibit "E"

## Davis Trust Well
### Profit & Loss by Class

| Projected | May 09 | Jun 09 | Jul 09 | Aug 09 | Sep 09 | Oct 09 | Nov 09 | Dec 09 | Jan 10 |
|---|---|---|---|---|---|---|---|---|---|
| Ordinary Income/Expense | | | | | | | | | |
| Income | | | | | | | | | |
| Gas Sales | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 |
| Oil Sales | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 |
| Total Income | 8,600 | 8,600 | 8,600 | 8,600 | 8,600 | 8,600 | 8,600 | 8,600 | 8,600 |
| | | | | | | | | | |
| Cost of Goods Sold | | | | | | | | | |
| Lease Operating Expense | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 |
| Provision for Depletion | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Severance Taxes | | | | | | | | | |
| Severance Tax - Gas | 230 | 230 | 230 | 230 | 230 | 230 | 230 | 230 | 230 |
| Severance Tax - Oil | 70 | 70 | 70 | 70 | 70 | 70 | 70 | 70 | 70 |
| Total Severance Taxes | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 |
| | | | | | | | | | |
| Total COGS | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 |
| | | | | | | | | | |
| Gross Profit | 7,800 | 7,800 | 7,800 | 7,800 | 7,800 | 7,800 | 7,800 | 7,800 | 7,800 |

TSOC-0001

1333515-1

# Exhibit "E"

## Davis Trust Well
### Profit & Loss by Class

| Projected | Feb 10 | Mar 10 | Apr 10 | May 10 | Jun 10 | Jul 10 | Aug 10 | Sep 10 | Oct 10 |
|---|---|---|---|---|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | | | | | | |
| Income | | | | | | | | | |
| Gas Sales | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 6,000 | 4,000 |
| Oil Sales | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 500 | 400 |
| Total Income | 8,600 | 8,600 | 8,600 | 8,600 | 8,600 | 8,600 | 8,600 | 6,500 | 4,400 |
| | | | | | | | | | |
| Cost of Goods Sold | | | | | | | | | |
| Lease Operating Expense | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 |
| Provision for Depletion | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Severance Taxes | | | | | | | | | |
| Severance Tax - Gas | 230 | 230 | 230 | 230 | 230 | 230 | 230 | 230 | 230 |
| Severance Tax - Oil | 70 | 70 | 70 | 70 | 70 | 70 | 70 | 70 | 70 |
| Total Severance Taxes | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 |
| | | | | | | | | | |
| Total COGS | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 |
| | | | | | | | | | |
| Gross Profit | 7,800 | 7,800 | 7,800 | 7,800 | 7,800 | 7,800 | 7,800 | 5,700 | 3,600 |

1333515-1

TSOC-0001

# Exhibit "E"

## Davis Trust Well
### Profit & Loss by Class

| Projected | Nov 10 | Dec 10 | TOTAL |
|---|---|---|---|
| **Ordinary Income/Expense** | | | |
| **Income** | | | |
| Gas Sales | 2,000 | 0 | 204,000 |
| Oil Sales | 200 | 0 | 15,500 |
| **Total Income** | 2,200 | 0 | 219,500 |
| | | | |
| **Cost of Goods Sold** | | | |
| Lease Operating Expense | 500 | 500 | 14,845 |
| Provision for Depletion | 0.00 | 0.00 | 0 |
| **Severance Taxes** | | | |
| Severance Tax - Gas | 230 | 230 | 5,980 |
| Severance Tax - Oil | 70 | 70 | 1,820 |
| **Total Severance Taxes** | 300 | 300 | 7,800 |
| | | | |
| **Total COGS** | 800 | 800 | 22,645 |
| | | | |
| **Gross Profit** | 1,400 | (800) | 196,855 |

TSOC-0001

1333515-1

# Exhibit "F"

## Apache - MP #7-2
## Revenue & Cost Projection

| Projected | Nov 08 | Dec 08 | Jan 09 | Feb 09 | Mar 09 | Apr 09 | May 09 |
|---|---|---|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | | | | |
| **Income** | | | | | | | |
| Gas Sales | 0.00 | 0.00 | 29,965.39 | 33,211.37 | 40,737.87 | 45,220.87 | 56,746.01 |
| Oil Sales | 0.00 | 0.00 | 767.46 | 5,141.40 | 6,594.65 | 3,689.64 | 6,019.11 |
| **Total Income** | 0.00 | 0.00 | 30,732.85 | 38,352.77 | 47,332.52 | 48,910.51 | 62,765.12 |
| | | | | | | | |
| **Cost of Goods Sold** | | | | | | | |
| Lease Rentals | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Dry Hole Costs | | | | | | | |
| DHC - Prepaid | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Dry Hole Costs - Other | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total Dry Hole Costs** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | | | | | |
| IDC Expense (Recomplete) | 0.00 | 0.00 | 10,000.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Lease Operating Expense | 0.00 | 0.00 | 415.60 | 658.06 | 0.00 | 962.34 | 934.69 |
| Provision for Depletion | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total COGS** | 0.00 | 0.00 | 10,415.60 | 658.06 | 0.00 | 962.34 | 934.69 |
| | | | | | | | |
| **Gross Profit** | 0.00 | 0.00 | 20,317.25 | 37,694.71 | 47,332.52 | 47,948.17 | 61,830.43 |

TSOC-0001

1333518-1

# Exhibit "F"

## Apache - MP #7-2
## Revenue & Cost Projection

| Projected | Jun 09 | Jul 09 | Aug 09 | Sep 09 | Oct 09 | Nov 09 | Dec 09 |
|---|---|---|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | | | | |
| **Income** | | | | | | | |
| Gas Sales | 64,492.32 | 34,291.23 | 25,738.92 | 21,027.44 | 13,427.58 | 10,914.75 | 8,836.80 |
| Oil Sales | 4,204.01 | 2,848.33 | 1,478.75 | 1,981.31 | 1,013.54 | 906.54 | 1,073.71 |
| **Total Income** | 68,696.33 | 37,139.56 | 27,217.67 | 23,008.75 | 14,441.12 | 11,821.29 | 9,910.51 |
| | | | | | | | |
| **Cost of Goods Sold** | | | | | | | |
| Lease Rentals | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Dry Hole Costs | | | | | | | |
| DHC - Prepaid | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Dry Hole Costs - Other | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total Dry Hole Costs** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | | | | | |
| IDC Expense (Recomplete) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Lease Operating Expense | 0.00 | 1,138.07 | 297.10 | 424.39 | 298.93 | 429.70 | 668.57 |
| Provision for Depletion | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total COGS** | 0.00 | 1,138.07 | 297.10 | 424.39 | 298.93 | 429.70 | 668.57 |
| | | | | | | | |
| **Gross Profit** | 68,696.33 | 36,001.49 | 26,920.57 | 22,584.36 | 14,142.19 | 11,391.59 | 9,241.94 |

TSOC-0001

1333518-1

# Exhibit "F"

## Apache - MP #7-2
## Revenue & Cost Projection

| Projected | Jan 10 | Feb 10 | Mar 10 | Apr 10 | May 10 | Jun 10 |
|---|---|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | | | |
| **Income** | | | | | | |
| Gas Sales | 7,370.86 | 4,611.22 | 4,054.39 | 4,501.47 | 3,948.16 | 1,862.81 |
| Oil Sales | 788.59 | 1,165.04 | 645.17 | 331.20 | 639.30 | 312.74 |
| **Total Income** | 8,159.45 | 5,776.26 | 4,699.56 | 4,832.67 | 4,587.46 | 2,175.55 |
| | | | | | | |
| **Cost of Goods Sold** | | | | | | |
| Lease Rentals | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Dry Hole Costs | | | | | | |
| DHC - Prepaid | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Dry Hole Costs - Other | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total Dry Hole Costs** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | | | | |
| IDC Expense (Recomplete) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Lease Operating Expense | 637.15 | 904.09 | 606.52 | (4,022.60) | 569.60 | 739.71 |
| Provision for Depletion | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total COGS** | 637.15 | 904.09 | 606.52 | (4,022.60) | 569.60 | 739.71 |
| | | | | | | |
| **Gross Profit** | 7,522.30 | 4,872.17 | 4,093.04 | 8,855.27 | 4,017.86 | 1,435.84 |

TSOC-0001

1333518-1

# Exhibit "F"

## Apache - MP #7-2
## Revenue & Cost Projection

| Projected | Jul 10 | Aug 10 | Sep 10 | Oct 10 | Nov 10 | Dec 10 | TOTAL |
|---|---|---|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | | | | |
| **Income** | | | | | | | |
| Gas Sales | 3,242.80 | 2,861.78 | 1,779.75 | 1,425.11 | 1,443.33 | 1,001.41 | 422,713.64 |
| Oil Sales | 71.57 | 86.07 | 0.00 | 0.00 | 0.00 | 0.00 | 39,758.13 |
| **Total Income** | 3,314.37 | 2,947.85 | 1,779.75 | 1,425.11 | 1,443.33 | 1,001.41 | 462,471.77 |
| | | | | | | | |
| **Cost of Goods Sold** | | | | | | | |
| Lease Rentals | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Dry Hole Costs** | | | | | | | |
| DHC - Prepaid | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Dry Hole Costs - Other | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total Dry Hole Costs** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | | | | | |
| IDC Expense (Recomplete) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10,000.00 |
| Lease Operating Expense | 0.00 | 1,318.83 | 500.98 | 589.89 | 550.64 | 572.22 | 9,194.48 |
| Provision for Depletion | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total COGS** | 0.00 | 1,318.83 | 500.98 | 589.89 | 550.64 | 572.22 | 19,194.48 |
| | | | | | | | |
| **Gross Profit** | 3,314.37 | 1,629.02 | 1,278.77 | 835.22 | 892.69 | 429.19 | 443,277.29 |

1333518-1

TSOC-0001

## Exhibit "G"

### Payments to Creditors within 90 Days of Date of Petition Exceeding $5,475.00

| Name of Entity | Date of Transfer | | Amount |
|---|---|---|---|
| Administaff of Texas, Inc.; COBRA Administration | | | |
| P.O. Box 203332; Houston, TX 77216-3332 | 03/25/2008 | $ | 1,121.10 |
| | 03/25/2008 | $ | 695.08 |
| | 04/17/2008 | $ | 1,121.10 |
| | 04/17/2008 | $ | 695.08 |
| | 05/22/2008 | $ | 1,121.10 |
| | 05/22/2008 | $ | 695.08 |
| | 06/25/2008 | $ | 1,121.10 |
| | 06/25/2008 | $ | 695.08 |
| Total: | | $ | 7,264.72 |
| | | | |
| MS Crescent Nine Greenway SPV, LLC | | | |
| P.O. Box 846253; Dallas, TX 75284-6253 | 03/25/2008 | $ | 5,381.17 |
| | 03/27/2008 | $ | 122.50 |
| | 04/28/2008 | $ | 5,731.17 |
| | 05/23/2008 | $ | 8,189.71 |
| | 06/25/2008 | $ | 5,512.42 |
| | | $ | 5,932.42 |
| Total: | | $ | 30,869.39 |

### Payments to Insiders Within One Year of Date of Petition

| Name of Entity | Date of Transfer | | Amount |
|---|---|---|---|
| Charles A. Sharman | | | |
| 8 Greenway Plaza, Suite 3040; Houston, TX 77046 | 07/20/2007 | $ | 467.17 |
| | 07/20/2007 | $ | 10.50 |
| | 08/27/2007 | $ | 330.46 |
| | 08/27/2007 | $ | 28.00 |
| | 08/27/2007 | $ | 83.88 |
| | 09/18/2007 | $ | 379.55 |
| | 09/18/2007 | $ | 33.00 |
| | 09/18/2007 | $ | 330.00 |
| | 10/16/2007 | $ | 332.17 |
| | 10/16/2007 | $ | 6.00 |
| | 12/31/2007 | $ | 734.62 |
| | 12/31/2007 | $ | 15.00 |
| | 12/31/2007 | $ | 107.41 |
| | 12/31/2007 | $ | 142.79 |
| | 12/31/2007 | $ | 58.59 |
| | 01/24/2007 | $ | 500.97 |
| | 01/24/2007 | $ | 21.00 |
| | 02/22/2007 | $ | 400.39 |
| | 02/22/2007 | $ | 56.00 |
| | 02/22/2007 | $ | 25.74 |
| | 03/27/2007 | $ | 374.52 |

## Exhibit "G"

|  |  |  |  |
|---|---|---|---|
|  | 03/27/2007 | $ | 24.00 |
|  | 04/30/2007 | $ | 392.61 |
|  | 04/30/2007 | $ | 6.00 |
|  | 06/30/2007 | $ | 2,500.00 |
|  | 07/13/2007 | $ | 2,500.00 |
|  | 07/31/2007 | $ | 2,500.00 |
|  | 08/15/2007 | $ | 2,500.00 |
|  | 08/31/2007 | $ | 2,500.00 |
| Total: |  | $ | 17,360.37 |

**Chip Langston**
10210 Highway 243; Kaufman, TX 75142

|  |  |  |  |
|---|---|---|---|
|  | 07/01/2007 | $ | 928.04 |
| Total: |  | $ | 928.04 |

**Langston Energy, LLC (v)**
10210 Highway 243; Kaufman, TX 75142

|  |  |  |  |
|---|---|---|---|
|  | 01/31/2007 | $ | 91.46 |
|  | 01/31/2007 | $ | 8.49 |
|  | 02/28/2007 | $ | 82.61 |
|  | 02/28/2007 | $ | 7.67 |
|  | 03/31/2007 | $ | 91.46 |
|  | 03/31/2007 | $ | 8.49 |
|  | 04/30/2007 | $ | 88.51 |
|  | 04/30/2007 | $ | 8.22 |
|  | 05/31/2007 | $ | 91.46 |
|  | 05/31/2007 | $ | 8.49 |
|  | 06/30/2007 | $ | 88.51 |
|  | 06/30/2007 | $ | 8.22 |
|  | 07/31/2007 | $ | 91.46 |
|  | 07/31/2007 | $ | 8.49 |
|  | 08/31/2007 | $ | 91.46 |
|  | 08/31/2007 | $ | 8.49 |
|  | 09/30/2007 | $ | 88.51 |
|  | 09/30/2007 | $ | 8.22 |
|  | 10/31/2007 | $ | 91.46 |
|  | 10/31/2007 | $ | 8.49 |
|  | 11/30/2007 | $ | 88.51 |
|  | 11/30/2007 | $ | 8.22 |
|  | 12/31/2007 | $ | 91.46 |
|  | 12/31/2007 | $ | 8.49 |
| Total: |  | $ | 1,176.85 |

**Texas Standard Oil & Gas, LP (v)**
9 Greenway Plaza, Suite 3040; Houston, TX 77046

|  |  |  |  |
|---|---|---|---|
|  | 01/31/2007 | $ | 112.92 |
|  | 01/31/2007 | $ | 12.48 |
|  | 02/28/2007 | $ | 101.99 |
|  | 02/28/2007 | $ | 11.27 |
|  | 03/31/2007 | $ | 112.92 |
|  | 03/31/2007 | $ | 12.48 |
|  | 04/30/2007 | $ | 109.27 |
|  | 04/30/2007 | $ | 12.08 |
|  | 05/31/2007 | $ | 112.92 |
|  | 05/31/2007 | $ | 12.48 |

TSOC-0001

# Exhibit "G"

|  |  |  |  |
|---|---|---|---|
|  | 06/30/2007 | $ | 109.27 |
|  | 06/30/2007 | $ | 12.08 |
|  | 07/31/2007 | $ | 112.92 |
|  | 07/31/2007 | $ | 12.48 |
|  | 08/31/2007 | $ | 112.92 |
|  | 08/31/2007 | $ | 12.48 |
|  | 09/30/2007 | $ | 109.27 |
|  | 09/30/2007 | $ | 12.08 |
|  | 10/31/2007 | $ | 112.92 |
|  | 10/31/2007 | $ | 12.48 |
|  | 11/30/2007 | $ | 109.27 |
|  | 11/30/2007 | $ | 12.08 |
|  | 12/31/2007 | $ | 112.92 |
|  | 12/31/2007 | $ | 12.48 |
| Total: |  | $ | 1,476.46 |

**Timothy M. Roberson**
9 Greenway Plaza, Suite 3040; Houston, TX 77046

|  |  |  |  |
|---|---|---|---|
|  | 06/30/2007 | $ | 500.00 |
|  | 07/13/2007 | $ | 500.00 |
|  | 07/31/2007 | $ | 1,000.00 |
|  | 08/15/2007 | $ | 1,000.00 |
| Total: | 08/31/2007 | $ | 1,000.00 |
|  |  | $ | 4,000.00 |

**TXS 498 Corp (v)**
9 Greenway Plaza, Suite 3040; Houston, TX 77046

|  |  |  |  |
|---|---|---|---|
|  | 01/31/2007 | $ | 21.45 |
|  | 02/28/2007 | $ | 19.38 |
|  | 03/31/2007 | $ | 21.45 |
|  | 04/30/2007 | $ | 20.76 |
|  | 05/31/2007 | $ | 21.45 |
|  | 06/30/2007 | $ | 20.76 |
|  | 07/31/2007 | $ | 21.45 |
|  | 08/31/2007 | $ | 21.45 |
|  | 09/30/2007 | $ | 20.76 |
|  | 10/31/2007 | $ | 21.45 |
|  | 11/30/2007 | $ | 20.76 |
|  | 12/31/2007 | $ | 21.45 |
| Total: |  | $ | 252.57 |

## EXHIBIT "H"

### EXECUTORY CONTRACTS AND/OR LEASES
### ASSUMED BY THE REORGANIZED DEBTOR

1. Joint Operating Agreement dated effective October 1, 2004, between Apache Corporation, as Operator, and Sandalwood Exploration, L.P. et al., as Non-Operators, covering Main Pass Area Block 7, Offshore Louisiana.

2. Joint Operating Agreement dated December 15, 2004 between Sandalwood Oil & Gas, L.P., as Operator, and Island Drilling, LLC et al., as Non-Operators, covering the Calcasieu Lake South Prospect, Cameron Parish, Louisiana.

3. Farmout Agreement dated February 25, 2004, between Forest Oil Corporation, Texas Standard Oil Company, Nobel Energy, Inc. and Pioneer Natural Resources USA, Inc. regarding West Delta 34, Offshore Louisiana.

4. Joint Operating Agreement dated January 3, 1977, between Transco Exploration Company as Operator, and Freeport Oil Company et al., as Non-Operators, covering the North Half (n/2) of West Delta Area Block 34, Offshore, Louisiana.

5. Nominee Agreement Regarding Brazos Block 488 between Debtor and Buccaneer Resources, LLC and Highbaugh Field Corporation.

6. Nominee Agreement Regarding High Island A-96 between Debtor and Texas Standard Oil & Gas, LP.