UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| TEXAS STANDARD OIL COMPANY | § | |
| | § | CASE NO. 08-34031-H4-11 |
| | § | |
| Debtor | § | |

**FOREST OIL CORPORATION, MARINER ENERGY RESOURCES, INC.
AND MARINER ENERGY, INC.'S OBJECTIONS TO
TEXAS STANDARD OIL COMPANY'S PLAN OF REORGANIZATION**

TO THE HONORABLE UNITED STATES BANKRUPCTY COURT JUDGE:

Creditors Forest Oil Corporation, Mariner Energy Resources, Inc. and Mariner Energy, Inc. file their objections to the Debtor Texas Standard Oil Company's Plan of Reorganization and would show the court as follows:

1. Creditors Forest Oil Corporation ("Forest"), Mariner Energy, Inc. and Mariner Energy Resources, Inc. (collectively "Mariner") (sometimes collectively the "Creditors") object to Debtor Texas Standard Oil Company's Plan of Reorganization (the "Plan"). Creditors object to the Plan as not confirmable for the following reasons.

2. The Plan is not feasible as the Plan (Article 4.1) provides that undisputed post-petition ordinary course obligations will be paid in accordance with related agreements. At this time, Debtor has not paid any of those obligations and the Plan does not address how those obligations will be paid.[1]

3. Furthermore, the Plan is not feasible as the Plan provides that unpaid

---

[1] There is a vast difference between the value of assets asserted by Debtor in its schedules versus the amount set forth in its Plan. The Plan makes no reconciliation of those amounts.

administrative expenses will be paid in full in cash on or before the Effective Date. The Plan does not provide how those obligations will be paid, including, but not limited to, addressing how the Debtor will pay the estimated administrative claim of Mariner of approximately $452,000.00[2] when the Debtor has less than $25,000.00 in the bank and, for the last operating period, the Debtor showed a loss of almost ($50,000.00). In addition, the Disclosure Statement does not disclose the existence of Mariner's administrative claim or describe where the funds will come from to pay that claim, causing the Plan to violate 11 U.S.C. 1129(a)(1) and/or (a)(2), since Mariner's administrative claim and the apparent absence of funds to pay the claim, are clearly material factors that ought to have been disclosed in order to enable parties in interest to cast a meaningful and informed ballot on the Plan.[3]

4. Additionally, the Plan is not feasible as the Debtor lacks adequate funds and capital to make the payments required by the Plan.

5. The Plan potentially violates the absolute priority rule in the general unsecured class (Class 7) as follows:

> i. 11 USC 1129(b)(1) provides that if an impaired class has not accepted the Plan, and the Plan otherwise satisfies confirmation criteria in 1129(a), the Court can confirm the plan if it does not discriminate unfairly, and is fair and equitable, as to each non-accepting impaired class. For the purpose of determining whether a plan is fair and equitable as to a non-accepting, impaired unsecured class, the Plan must, at a minimum, provide that: (i)

---

[2] This does not include the claims of Hughes Watters Askanase of approximately $210,000.00 and Richard Carson of approximately $40,000.00.

[3] The Disclosure Statement merely states that Debtor estimates administrative expenses to be $150,000.00 (this is presumably professional fees). In actuality, as a result of Mariner's administrative claim, administrative expenses, for the purposes of confirmation, are more than 300% greater than $150,000.00, but that fact has not been disclosed nor has the Debtor's means, if any, for satisfying these administrative claims.

each holder of a claim in the non-accepting, impaired class must receive property under the plan equal to 100% of its claim in that class or (ii) no property will be retained by any member of any class junior to the non-accepting, impaired class. 11 USC 1129(b)(2)(B). If Mariner/Forest's claims are estimated in a manner that treats part of the claims as allowable, unsecured claims for the purpose of confirmation[4] and (ii) if the amount of such unsecured claims is sufficient to cause the class to fail to accept the Plan (i.e., greater than 2/3 in dollar amount of the claims in the unsecured class), then the Plan cannot be confirmed unless 11 USC 1129(b)(2)(B) is satisfied. Since the Plan provides that: (i) the general unsecured class will not get paid 100% and (ii) a class junior to the general unsecured class (i.e., the owners, Class 8) will retain property under the Plan, cram down is not possible and confirmation cannot occur.

5. The Plan potentially violates the absolute priority rule in Classes 5 and 6 (Secured claims of Forest and Mariner)

    i. The absolute priority rule, as described above, also contains a subsection establishing the minimum treatment that a non-accepting, impaired secured class must receive in a cram down. 11 USC 1129(b)(2)(A). This subsection requires that such claimants: (i) retain their liens on collateral and (ii) receive deferred cash installments of a value, as of the effective date of the plan, at least equal to the value of the lien; or are allowed to credit bid their liens if the encumbered property is to be sold under the

---

[4] Mariner has contemporaneously filed a Motion to Alter and Amend seeking reconsideration of part of the Court's Estimation ruling on or about March 18, 2009.

plan (not applicable here); or receive the "indubitable equivalent" of their secured claims. The Plan does not provide that Mariner and Forest will retain their liens and (b) the Plan does not provide that Mariner and Forest will receive deferred cash payments equal to the amount of their secured claims. Instead, the Plan provides that Forest and Mariner "might" receive such payments. To the extent that Forest and Mariner do not get full payment of the estimated amounts, Forest and Mariner object to the Plan.

ii. To the extent that the Debtor is also relying on the third subsection (indubitable equivalent), once the escrows are funded Forest and Mariner are at greater risk than now, since their liens may be gone (see Plan, p. 22 and 23 "Release of Lines") and the escrow may not be complete until sometime in the future. This is not the indubitable equivalent of the claims.

iii. Nor does the Debtor's option to "transfer collateral" in satisfaction of the secured claims constitute the indubitable equivalent of the claims. See, Plan, P. 10 articles 8 and 9. The collateral is: (i) the MOSH Note and (ii) certain oil and gas properties. Under the Plan, the Debtor will not be required to pay anything to classes 5 and 6 until "final determination of the issue on Appeal" (which might take years). If, years from now, the Debtor decides to keep the cash and transfer oil and gas properties likely to Mariner/Forest in satisfaction of their claims, this is not the indubitable equivalent of the claimant's lien on the MOSH cash. The oil and gas properties do not have a positive valve at all, since they (i) produce

minimal income (which will go to pay other creditors under the Plan and deplete the asset) and (ii) are burdened with P&A liabilities negating any asset valve. It is not fair and equitable to allow the Debtor to "choose" to keep cash collateral and substitute worthless oil and gas properties, See 11 USC 1129(b)(1).

7. The Plan improperly classifies Forest's and Mariner's claims as unimpaired. Impairment is defined at 11 USC 1124 and to leave a claim unimpaired, the Plan must either: 1.) leave unaltered the legal, equitable and contractual rights of the claimant; or 2.) in general terms, pay in cash in full any amounts in default under a defaulted installment obligation, compensate the claimant for any delays in payment and restore the maturity of the obligation (i.e., don't alter the terms of the debt). Clearly, the Plan alters the legal, contractual and equitable rights of Forest and Mariner as they hold unstayed final judgments that are entitled to immediate enforcement. As the Plan provides something else, the secured claims of Forest and Mariner are impaired, meaning that they are entitled to vote and to insist on compliance with the the absolute priority rule.

8. The Plan does not address Forest's and Mariner's setoff claims. The Proof of Claims of Forest and Mariner include a claim to a right to setoff any amounts they may owe the Debtor pre-petition against any amounts the Debtor owes them pre-petition. For the avoidance of doubt and waiver, the Plan should clearly acknowledge this right.

9. The Plan contains an unnecessary and over broad injunction provision. Article 18.1 of the Plan contains a broad injunction which is unnecessary in light of 11 USC 1141.

10. The Plan is not feasible with respect to assumption of executory contracts.

    i. Article 17.2 of the Plan provides for the assumption by the Debtor of

certain listed executory contracts on the Effective Date of the Plan. These include a Joint/Offshore Operating Agreement to which Mariner, among others, is a party. In order to assume an executory contract, a debtor must "cure" all defaults under the contract. 11 USC 365(b). In order to assume those agreements, the Debtor must pay Forest and Mariner all amounts in default under those agreements. The Plan does not propose to pay any cure amounts, nor does the Debtor address this issue.

11. The Plan (Article 18.2) provides for a discharge of the Debtor, but the Debtor may not be entitled to a discharge. 11 USC 1141(d)(3) states that confirmation of a plan results in the discharge of the debtor from any pre-confirmation debts (except to the extent that the plan provides for payment of such debts), but no discharge is available if: (i) the plan provides for liquidation of the debtor's property, (ii) the debtor does not engage in business after consummation of the plan and (iii) the debtor could not get a discharge in Chapter. 7. It appears as if, in practicality, that the Plan does provide for the liquidation of the debtor and discontinuation of business. The Disclosure Statement indicates that the Debtor is going to finish collecting revenue from a couple of wells and finish the lawsuit. See, DS, p. 17. The minimal level of activity appears to fit within 1141(d)(3).

12. The Plan is ambiguous with respect to Mariner's claim. The Disclosure Statement (Section 6.7) states: "In the event that Mariner prevails on appeal and obtains a higher judgment, then the payout to unsecured creditors will likely be diminished." It is unclear from this statement whether the Debtor is proposing that Mariner's higher judgment would be: (i) included in the general unsecured class of claims or (ii) paid as part of Mariner's secured claim. If the former, this fact adds to Mariner's absolute priority objection, *supra*. If the latter, the Plan and

Disclosure Statement are bereft of any detail as to how the higher judgment would be paid.

13. The Plan provides no specific remedies that creditors are entitled to exercise if the Debtor defaults under the Plan, particularly after the case is closed.

14. The Plan does not provide for any specific means of implementation other than the fact that the owners will keep their interest and the asset will revest in the Debtor.

15. The Plan allows the Debtor to assign its interest in High Island A-96 to Texas Standard Oil & Gas LP, Grimes Energy Co. and PetroVal, Inc. in violation of the Memorandum Opinion and Order Denying Debtor's Motion for Authority to perform under Pre-Petition Nominee Agreement regarding High Island A-96 [Docket #56].

15. The estimated figures referenced herein and in creditors' ballots are referenced without prejudice to the final adjudication of the allowable amounts of the claims.

WHEREFORE, for the foregoing reasons, Creditors Forest Oil Corporation, Mariner Resources Energy, Inc. and Mariner Energy, Inc. request that Debtor Texas Standard Oil Company's Plan of Reorganization be rejected that this proceeding be converted to a Chapter 7 liquidation proceeding and that a trustee be appointed to oversee the liquidation process, and for such other and further relief to which Creditors may be justly entitled.

Respectfully submitted,

By:/s/ Bradley L. DeLuca
Bradley L. DeLuca
SBT No. 05653800
George A. Kurisky
SBT No: 11767700

**ATTORNEYS FOR CREDITORS FOREST OIL, MARINER ENERGY RESOURCES, INC. AND MARINER ENERGY, INC.**

OF COUNSEL:
**JOHNSON DELUCA KENNEDY & KURISKY, P.C.**
4 Houston Center
1221 Lamar Street, Suite 1000
Houston, Texas 77010
(713) 652-2525 Telephone
(713) 652-5130 Facsimile

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served via ECF and or First Class Mail on the 1st day of March, 2009, to the following:

All parties on the attached service list.

/s/ Bradley L. DeLuca
Bradley L. DeLuca

## SERVICE LIST
Case No. 08-34031

**Debtor**
Texas Standard Oil Company
9 Greenway Plaza, Suite 3040
Houston, Texas 77046-0919
*Via US Mail*

**Debtor's Counsel**
Wayne Kitchens, Esq.
Heather McIntyre, Esq.
HughesWattersAskanase, LLP
333 Clay Street, 29th Floor
Houston, Texas 77002-4168
*Via ECF*

**U.S. Trustee**
Stephen D. Statham, Esq.
U.S. Trustee's Office
515 Rusk Street, Suite 3516
Houston, Texas 77002
*Via ECF*

### Parties Requesting Notice

Bradley DeLuca, Esq./Brigid Ashcroft, Esq.
George A. Kurisky, Jr., Esq.
Johnson DeLuca Kennedy, et al.
1221 Lamar Street, Suite 1000
Houston, Texas 77010
*Via ECF*

John P. Dillman, Esq.
Linebarger Goggan Blair & Sampson, LLP
1301 Travis Street, Suite 300
Houston, Texas 77002-7430
*Via ECF*

Lawrence F. Labanowski, Esq.
Edward F. Mulholland
Lawrence F. Labanowski & Associates
3939 Essex, Suite 600
Houston, TX 77027
*Via ECF*

Philip Eisenberg / Mark Chavaez
Locke Lord Bissell & Liddell, LLP
600 Travis Street, Suite 3400
Houston, TX 77002
*Via ECF*

### Creditors

Edward R. Ziegler, PE
5063 Westheimer, Suite 810
Houston, TX 77056
*Via US Mail*

Grimes Energy Company
11 Greenway, Suite 2092
Houston, TX 77046
*Via US Mail*

Internal Revenue Service
Centralized Insolvency Operations
P.O. Box 21126
Philadelphia, PA 19114-0326
*Via US Mail*

Langston Energy, LLC
9 Greenway Plaza, Suite 3040
Houston, Texas 77046-0919
*Via US Mail*

Pat Johnson
9 Greenway Plaza, Suite 3040
Houston, Texas 77046-0919
*Via US Mail*

PetroVal, Inc.
Attn: Kimberly S. McCullough
2009 Huldy
Houston, TX 77019
*Via US Mail*

Spagnoletti & Co.
401 Louisiana, 8th Floor
Houston, TX 77002
*Via US Mail*

Texas Standard Oil & Gas, LP
9 Greenway Plaza, Suite 3040
Houston, Texas 77046
*Via US Mail*

1318525-1:TSOC:0001

**SERVICE LIST**
Case No. 08-34031

Timothy Roberson
9 Greenway Plaza, Suite 3040
Houston, Texas 77046-0919
*Via US Mail*

TXS 498 Corp.
9 Greenway Plaza, Suite 3040
Houston, Texas 77046-0919
*Via US Mail*